(152 App. Div. 422.)

### In re VALLEY STREAM.
### LOFT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   September 10, 1912.)

1. EMINENT DOMAIN (§ 150*)—TAKING OF REAL PROPERTY—DAMAGES.

   Defendant in February, 1907, had acquired a country place on Long Island approximately 1,200 feet wide, front and rear, and about 1,170 feet deep, containing 42 acres, at an aggregate purchase price of $68,000, bounded by a road on one side and a railroad in the rear. Complainant city condemned a strip off the rear along the railroad, varying from 100 to 200 feet wide, for aqueduct purposes, the taking of which did not interfere with any of defendant's buildings, but only cut off a portion of a pond. Defendant, after purchasing the property, improved the lakes or ponds thereon, rebuilt the buildings, etc., so that the entire property cost him about $100,000. There was no dispute that, viewed as acreage property only, the value of $1,500 per acre was substantially correct. Experts called by claimant testified that the property had doubled in value within a few months after its purchase, and was worth as a whole $200,000, and that the value of the residue after the taking of the unimproved strip was only $75,000. *Held*, that an award of $45,000 was so fanciful and extravagant as to require vacation, notwithstanding the rule that ordinarily the report of commissioners will not be disturbed, because the opinion of the court differs from that of the commissioners as to the amount of damage.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 402; Dec. Dig. § 150.*]

2. EMINENT DOMAIN (§ 253*)—PROPERTY TAKEN—VACATION OF AWARD—APPEALABILITY.

   Under the Greater New York Charter (Laws 1901, c. 466), providing for the condemnation of land for public use, an order refusing to confirm the report of commissioners of appraisal, and remitting the proceedings, so far as certain parcels, for which an extravagant award had been made, to new commissioners, was concerned, was not appealable.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 660–664; Dec. Dig. § 253.*]

Appeal from Special Term, Nassau County.

In the matter of the application of the city of New York to acquire certain real estate at Valley Stream. From an order of the Special Term, refusing to confirm the report of commissioners of appraisal as to certain parcels of land belonging to George W. Loft, he appeals. Dismissed.

Argued before HIRSCHBERG, BURR, THOMAS, WOODWARD, and RICH, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Frederick St. John, of New York City, for appellant.

James D. Bell, of Brooklyn (John B. Shanahan, of Brooklyn, on the brief), for respondent.

BURR, J. This is an appeal from an order of the Kings County Special Term, refusing to confirm the report of commissioners of appraisal as to parcels 234 and 235 upon the damage map filed in this proceeding, and remitting the proceedings, so far as these parcels are concerned, to new commissioners.

The proceeding was brought by the commissioner of water supply, gas, and electricity, under the provisions of the Greater New York Charter (Laws 1901, c. 466), for the condemnation of a strip of land for aqueduct purposes, varying from 100 feet to 200 feet in width, and about 9 miles long and running from Valley Stream to Merrick, and for most of the distance along the southerly line of the Montauk Division of the Long Island Railroad. The only question in this case is whether the order shall be affirmed, or the appeal dismissed upon the ground that the order is not appealable, for the determination of the commissioners was clearly without justification.

[1] George W. Loft, the appellant, is the owner of a plot of ground bounded on the south by the Merrick road and on the north by the Long Island Railroad. It is approximately 1,200 feet wide in the front and in the rear, and about 1,170 feet deep on each side, and contains about 42 acres. The strip taken is in the rear, immediately adjoining the railroad. The width of the plot will not be diminished by the taking. Its depth will be reduced to about 1,000 feet. Appellant purchased this property from two former owners. The first piece, consisting of about 26 acres, was purchased by him in February, 1907; the second piece, consisting of about 16 acres, was purchased in September of the same year. Title to the land condemned vested in the city on December 15, 1908, a little more than a year thereafter. The aggregate purchase price of the property was $68,000. At the time of the purchase there was upon it a house, designed for and since used by the owner as a country residence, some outbuildings, and some ponds or lakes. After purchasing it, the present owner expended in improving the property between $30,000 and $40,000. The lakes were cleaned out, new coping put around them, new bridges built, some of the old buildings torn down and rebuilt, the icehouse repaired, a new bowling alley erected, and the interior of the dwelling house was "gutted and reconstructed." There was also some grading done upon the ground. The exact amount of the expenditure therefor does not appear, nor the various sums paid for these various improvements, except that the sum of $8,000 was expended upon the plumbing in the main house. From this property the city takes about 7½ acres in the rear, none of which, so far as appears, is occupied by any buildings, although a portion of one of the ponds upon this property is included in the strip taken.

Appellant's entire holdings had been acquired by him within a few months prior to the passing of title in the city, at a cost of about $100,000. For the land taken, constituting about one-sixth of the

whole, in the least desirable part thereof, and unimproved so far as any buildings thereon are concerned, the commissioners awarded him $45,000. There is no substantial dispute that, viewed as acreage property only, the value placed upon it by the city's expert of $1,500 per acre, or $11,250 in all, was substantially correct. The residue of the award is for supposed consequential damages. The experts called by the claimant testified that this property within a few months had doubled in value, and was worth as a whole $200,000, but that the value of the residue, after taking this unimproved strip in the rear, abutting on the railroad, was only $75,000, or, in other words, that the value of the land taken and the consequential damages to the residue was $125,000. It is difficult to believe that these experts were even "honestly mistaken." The allowance made by the commissioners equals nearly one-half of the cost of the entire property, although the house, two of the ponds, all of the improvements, and the entire frontage of the plot are unaffected. While we recognize the rule that ordinarily the report of the commissioners will not be disturbed because the opinion of the court differs from that of the commissioners as to the amount of damage, this sum is, as characterized by the Special Term, so "fanciful and extravagant" that the court was bound to interfere.

[2] Upon the question of the appealability of the order, we think much might be said in favor thereof, within the reasoning of Matter of Manhattan R. Co. v. O'Sullivan, 6 App. Div. 571, 40 N. Y. Supp. 326; affirmed on opinion below 150 N. Y. 569, 44 N. E. 1125. Notwithstanding this, we are of the opinion that the question is not an open one in this court. We see no escape from the binding force of the decision in Matter of City of New York—Hamilton Place, 143 App. Div. 302, 128 N. Y. Supp. 283; and Matter of Commissioner of Public Works, 111 App. Div. 285, 97 N. Y. Supp. 503, affirmed 185 N. Y. 391, 78 N. E. 146. The Court of Appeals, in the very recent case of Matter of Simmons, 203 N. Y. 241, 96 N. E. 456, has reviewed the authorities upon this perplexing question; and while it held that, under the statute then construed (Laws of 1905, c. 724), an appeal would lie to the Appellate Division from an order which vacated an award made by commissioners of appraisal, such determination was made to depend upon words appearing in that statute which are wanting in the charter provisions now under consideration, to wit:

"But from any determination of the Special Term an appeal may be taken to the Appellate Division."

There is a clear intimation in the opinion in that case that, but for these words, the court would "be compelled to hold that an appeal only lay from a confirmation of the report."

The appeal should be dismissed, with $10 costs and disbursements. All concur.