In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring an Easement within the United States Bulkhead Lines of Newtown and Maspeth Creeks in the Boroughs of Brooklyn and Queens; CORD MEYER COMPANY, Respondent.

Argued October 7, 1940; decided December 31, 1940.

*William C. Chanler, Corporation Counsel* (*Lewis Orgel, Julius Isaacs* and *Philip L. Wellens* of counsel), for appellant.

*John D. Monroe* for respondent.

496

LEHMAN, Ch. J.   In condemnation proceedings the Cord Meyer Company received an award of $32,000 for property owned by it and designated in the condemnation proceedings as Damage Parcel No. 11.   There was dispute as to the title to that damage parcel.   The Cord Meyer Company claimed title to it under a State grant made in 1871.   The city of New York claimed that the State had parted with title by much earlier grant.   The city appealed from the final decree in favor of the Cord Meyer Company, contending that the court at Special Term had erred in its determination of title.   The Cord Meyer Company appealed from the final decree, contending that the court had, through error, awarded inadequate damages.   The Appellate Division modified the award by increasing it to the sum of $46,830.

We agree with the courts below that the Cord Meyer Company had title to the damaged parcel taken in these proceedings.   The question remains whether the Appellate Division might properly increase the amount of damages awarded.   In the city of New York, the Appellate Division, upon an appeal from a final decree in a condemnation proceeding, has power to determine the appeal " upon the

merits both as to matters of law and fact." (Administrative Code of the City of New York, § B15–25.0, L. 1937, ch. 929.) Even so the power to reverse a finding of fact may be exercised only in accordance with the general rules of law regulating appeals to that court. It may not set aside a finding of value made at Special Term, unless such finding is based upon erroneous theory of law or erroneous ruling in the admission or exclusion of evidence, or unless it appears that the court at Special Term has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate. The field in which an appellate court may exercise its power to set aside a finding of fact has at times been defined more narrowly. We need not now decide whether under the provisions of the Administrative Code the power of the Appellate Division is as broad as we have said, for in this case it seems clear that the Appellate Division has increased a valuation which accords fully with the evidence.

Before the condemnation of Damage Parcel No. 11, the Cord Meyer Company had title to 215,281 square feet of land. Of this tract only 20,921 square feet were taken by the city. A bulkhead had been erected in 1900 upon the land contained in the damage parcel. The bulkhead unquestionably increased the value of the entire tract. Without it the tract could not be used for the most profitable use for which the land was fitted. The taking of the land upon which the bulkhead had been erected not only took away a portion of the land owned by the Cord Meyer Company but also reduced the value of the remainder of the land. The owner held unimproved land where previously it had owned improved land and the problem presented upon this appeal is whether the justice at Special Term gave reasonable weight to the evidence presented to establish the damages caused by the loss of the benefit of the improvement destroyed by the taking.

There can be no doubt that the owner's damages are the difference between the value of the land before part of it

was taken and the value of that which remained after part was taken. The original cost of constructing the bulkhead or its reconstruction cost is a factor in determining the value of the tract before the taking and of its decreased value after such taking. Evidence offered to show such cost, less depreciation suffered in the course of years, would, therefore, be relevant. (*Matter of City of New York*, 198 N. Y. 84.) Such evidence was offered by the owner and received by the court. An experienced engineer and dock builder, testifying for the plaintiff, calculated the cost of constructing a bulkhead of the same length and in the same position as the bulkhead taken by the city, at a figure a little under $60,000 and placed the depreciation of the bulkhead at ten per cent of that cost. He also testified that the cost of erecting a bulkhead is ninety dollars a linear foot. The city produced no witness to contradict that testimony. It called a witness who had expert knowledge of the purchase and sale of similar water front property when improved by a bulkhead and of similar property without such improvement. Admitting frankly that he has no expert knowledge of the cost of erecting a bulkhead, the witness testified that in his opinion the land before the taking when improved by a bulkhead was worth sixty cents a square foot and that the land which remained after the taking and without such improvement was worth only fifty cents a square foot. Calculating the damage in that manner he found that by the taking the owner had suffered a loss of $31,988 and the award made at Special Term for the loss is in accord with the testimony of the city's witness.

The record does not show that in accepting the testimony of the city's expert the justice at Special Term disregarded the testimony of the cost of construction of the bulkhead destroyed by the taking or the cost of reconstructing another bulkhead in its place. On the contrary, it appears that the justice at Special Term viewed the tract as an aid in determining the depreciation in the bulkhead erected twenty-three years before the taking. The cost of construction of the bulkhead and the degree of its depreciation at the

time of the taking was not the ultimate question to be decided by the court but was only a factor to be considered in determining the loss of value caused by the taking. (*Matter of City of New York, supra.*) In this case, indeed, there may be doubt as to whether such costs would be an important factor. Ordinarily an adequate improvement prudently planned and economically constructed enhances the value of the unimproved land by the cost of the construction. Conversely the taking or destruction of the improvement takes away the " structural value " of the improvement which, as we have said in the cited case, is " but another name for cost of reproduction, after making proper deductions for wear and tear " (p. 87). The cost of a bulkhead may, however, as the expert witness for the city pointed out, have no direct relation to the value of the benefit derived from the improvement, though concededly it " influences " the value of the property. A bulkhead may be necessary for the most profitable use of land but if only a short bulkhead is required in order to bring this benefit to a large tract of land, the resultant benefit may be much greater than the cost of improvement. On the other hand, if a longer bulkhead is required to serve a smaller area of land, the cost of the improvement may be greater than the benefit which would be derived by building it. In such case, the cost of a bulkhead added to original value of the land would be greater than the value of the improved land.

That explanation given by the city's expert justified the court at Special Term in basing the damage suffered by the owner upon the difference in the market value of land improved with a bulkhead and land not so improved rather than on the " construction value " of the bulkhead. Indeed, in a unanimous decision the majority opinion in the Appellate Division seems to indicate that, like the justice at Special Term, it found that the loss caused by the taking was the difference between the value of " bulkheaded " land and the value of land without a bulkhead; though only in the concurring opinion of Mr. Justice HAGARTY is there any indication of the manner in which the difference was

calculated. From that opinion it appears that the court fixed the value of the entire tract before the taking at seventy-five cents a square foot. At the rate of seventy-five cents a square foot, the value of the 20,921 square feet taken, it is pointed out, would amount to $15,690. The remainder of the land would then be without a bulkhead and the testimony of the expert shows that a bulkhead erected upon the new water line of the claimant's property, after the property in front of that line was taken by the city, would be 346 feet in length and would cost ninety dollars a linear foot to erect, and its total cost would thus be $31,140. This figure was then added to the value of the land taken and the amount thus fixed amounted to $14,830 more than the amount fixed by the justice at Special Term. Thus it appears that the Appellate Division not only found that the value of the premises improved by a bulkhead was seventy-five cents a square foot, though the justice at Special Term upon credible evidence found the value only sixty cents a square foot, but also found a difference of approximately sixteen cents a square foot between land so improved and land without a bulkhead, although the justice at Special Term had found that there was a difference in value of only ten cents a square foot. Though such difference might be insufficient to wipe out the loss of the " structural value " of the bulkhead without which the property could not be put to the same profitable use to which similar land with a bulkhead could be put, there is testimony that without the bulkhead the land might be put to some other use sufficiently profitable to justify a finding that the difference in value between the land with a bulkhead and land without a bulkhead is less than the " structural value " of the bulkhead.

The original bulkhead was, as we have said, twenty-three years old. Properly, neither Special Term nor the Appellate Division has made any finding of the cost of the original bulkhead, for a new bulkhead would be built upon the new water line, nor is there any finding of the depreciation of the old bulkhead. Concededly that bulkhead had depreciated at least ten per cent and after viewing it the trial court

might reasonably have found, if such finding were material, that after twenty-three years a larger allowance for depreciation would be reasonable. Discussion of the amount of that depreciation would serve no purpose here. Apparently in fixing the loss the Appellate Division has allowed the *entire* cost of building a new bulkhead upon the new line of the claimant's property, though the bulkhead taken had depreciated in the course of years. The court at Special Term did not base its finding of value on any erroneous theory of law; no error was made in its rulings on the admission or exclusion of evidence, and its adequacy is supported by credible evidence produced by the city.

The order of the Appellate Division should be reversed, without costs and the order of the Special Term affirmed.

CONWAY, J. (dissenting). The improvement in this instance was a bulkhead. It retained the filled-in land constituting the damage parcel. It was not only a proper and adequate improvement but a necessary one. There was only one expert called by either claimant or the city who had any knowledge or experience with respect to bulkheads. He was called by claimant and testified to the reconstruction cost, less depreciation, of the bulkhead taken in the proceeding and the cost of building a necessary substitute to retain the land of claimant which remained after the taking. That testimony was admissible (*Matter of City of New York*, 198 N. Y. 84), and in the absence of contradiction, controlling. In that case the court said:

" The learned Appellate Division has laid down the rule that, in condemnation proceedings, evidence of the structural value of buildings should not be received, and that the landowner must be confined to proof of the value of his land as enhanced by the value of the structures thereon. This is doubtless the rule applicable to certain cases, but we think it is not, and should not be, a rule of universal application. * * *

"A man may build an expensive mansion upon a barren waste, and, in such a case, the costly building may add little or nothing to the total value. In the greater number of cases, however, when the character of the structures is

well adapted to the kind of land upon which they are erected, the value of the buildings does enhance the value of the land. In such cases it is true that the value of the land as enhanced by the value of the structures is the total value which must be the measure of the owner's just compensation when his property is condemned for public use. As to that general proposition there can be no disagreement. But how is the enhancement of the land by the structures which it bears to be proven? If all buildings were alike, the rule laid down by the Appellate Division would be one of convenient and universal application. It is common knowledge, however, that buildings not only differ from each other in design, arrangement and structure, but that many which are externally similar and are situate upon adjoining lands, are essentially different in the quality and finish of the materials used and in the character of the workmanship employed upon them. It must follow that such differences contribute in varying degrees to the enhancement in the value of the land, and we can think of no way in which they can be legally proved except by resort to testimony of structural value, which is but another name for cost of reproduction, after making proper deductions for wear and tear " (pp. 86, 87).

Since this testimony was uncontradicted and undisputed by any one with knowledge or experience, to disregard it was error of law. That error was not cured by the personal view of the premises by the court. Such a view may be helpful to the court in some respects but technical knowledge of construction costs and proper depreciation write-offs could not be obtained thereby.

In *Perkins* v. *State of New York* (113 N. Y. 660) this court said: " The fact that the commissioners are required to view the premises and to act to some extent upon their own judgment, informed by ocular evidence, does not deprive this court of the power to review their award upon the question of damages. They may adopt some erroneous rule of damages, and their findings may be such, and the case, upon all the evidence, may be such as to show that they misconceived the facts and erred in their estimate."

In *Matter of Thompson* (121 N. Y. 277) it was held that where proof in a condemnation proceeding as to the damages was conflicting, the jurisdiction of the General Term was governed by the general rules of law regulating appeals to it. For a discussion as to the right to review the amount of damages on appeal, see *Matter of City of New York (Avenue A)* (66 Misc. Rep. 488).

An appeal may be taken to the Appellate Division upon questions of law or upon the facts. (Civ. Prac. Act, § 608.) The value of property taken in condemnation proceedings is a question of fact. (*Matter of City of New York [Fourth Ave.]*, 255 N. Y. 25.) Power to review the amount of the award is expressly given to the Appellate Division by the Administrative Code of the City of New York, section B15–25.0. That section provides: " The city or any party or person affected by the proceeding and aggrieved by the final decree of the court therein *as to awards* or as to assessments, or either of them, may appeal to the appellate division of the court. * * * Except as herein otherwise provided, such appeal shall be taken and heard in the manner provided by the civil practice act and the rules and practice of the court in relation to appeals from orders in special proceedings, and such appeal shall be heard and determined by such appellate division *upon the merits both as to matters of law and fact.*"

The Appellate Division had the power to increase the award and such increase is justified by the evidence. In so far as the order of the Appellate Division increased the amount of the award, it was in effect a reversal. Under section B15–25.0 of the Administrative Code of the City of New York such additional assessments for benefit as may be necessary may be made by Special Term upon appropriate application.

The order should be affirmed, with costs.

LOUGHRAN, SEARS and LEWIS, JJ., concur with LEHMAN, Ch. J.; CONWAY, J., dissents in opinion in which FINCH and RIPPEY, JJ., concur.

Ordered accordingly.