SYRACUSE GRADE CROSSING COMMISSION, Appellant-Respondent, v. M. A. WELLIN OIL COMPANY, INC., et al., Respondents-Appellants.

Fourth Department, December 29, 1944.

*James C. Tormey, Corporation Counsel (John H. Walrath* and *Arthur M. Beach* of counsel), for plaintiff-appellant and respondent.

*Stewart F. Hancock* for defendants-respondents and appellants.

*Per Curiam.* (1) Even conceding that the true construction of subdivision 4 of section 8 of the Syracuse Grade Crossing Elimination Act (L. 1928, ch. 825) would not apply to the instant situation unless at the time of condemnation the easement area was part of South State Street, and recognizing the force of defendants' Exhibit A, the street map filed by plaintiff in 1942, after the practical completion of the improvement, which map approved by the Public Service Commission in that year, purporting to show street changes, does not disclose a change in South State Street in front of the property of the defendant oil company, still it seems reasonably clear that South State Street was altered through a substantial compliance with section 14 of the same Grade Crossing Elimination Act by the filing with and the approval by the Public Service Commission of the two maps Exhibit 1 and Exhibit 20 prepared and adopted by plaintiff. Each map shows the easement area. Each refers to it as parcel 50. Reading together the two maps, the title which discloses the purpose for which the easement was desired, and its description, it is plain that the easement area in question was intended to become a part of South State Street. As, in substance, stated in *Mott* v. *Eno* (181 N. Y. 346, 366) the extent of the appropriation, in the case of a street, whether of a public easement therein or of the fee, is to be determined by the language used and upon consideration of the necessity to be supplied. Clearly these two exhibits disclose that this easement was taken for use in connection with South State Street necessitated by the lowering of the grade as fixed by Exhibit 20. Therefore the filing and the approval of these two maps constituted, at least, a substantial compliance with section 14 of the same Grade Crossing Elimination Act and upon such approval the area became a part of the street. When thereafter the easement area was condemned it was an easement which physically formed a part of an existing street, and not having been deeded to the railroad or to the city, became a part of the Syracuse street system under subdivision 4 of section 8 above mentioned.

(2) Exhibit No. 20 shows the proposed change in grade of South State Street. Since the easement area became a part of the street, that determines its grade also.

(3) If no part of said defendant's property had been condemned, defendants would have been relegated to an action in the Court of Claims (Syracuse Grade Crossing Elimination Act, § 9) to recover damage for change of grade of South State Street. By section 99 of the Second Class Cities Law such damages are recoverable by a property owner affected.

(4) Since, however, the easement was condemned, the measure of damage was the value of the easement taken together with the consequential damage to the remaining portion of the defendant's lands by reason of the use to be made of that easement. (*South Buffalo Ry. Co.* v. *Kirkover*, 176 N. Y. 301; *Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583; *Adirondack Power & Light Corporation* v. *Evans*, 226 App. Div. 490.)

(5) The Commissioners allowed as damages to the defendants the full value of the easement area and all damage that might result in the future by reason of further excavation of the area within the easement limits. Properly, they did not allow any future damage resulting from a change in grade of the easement area but treated any future change as a change of grade of the street as established by the plan Exhibit 20 as executed. This is clear from a reading of the various opinions of the County Court and the reports of the Commissioners. In the event that the grade of the easement area should be subsequently changed, defendants can then recover damages for such change, when and if made. (*Matter of City of New York* [*Northern Blvd.*], 281 N. Y. 48.)

(6) The Commissioners properly disallowed any damage for future temporary interference with the right of ingress and egress to and from South State Street as might be occasioned by any excavation therein, which did not change the grade of the easement area, made in it by the public authorities within the easement limits. (*Farrell* v. *Rose,* 253 N. Y. 73.) They did, however, quite clearly, in estimating the full consequential damage to the remaining property take into consideration the fact that the public authorities could in the future excavate the entire easement area, within its limits, but only to the grade established for South State Street.

(7) While probably the Commissioners should have considered in fixing the value of the property before the taking, the possibility of erecting a modern gas station on it (*Heiman* v. *Bishop,* 272 N. Y. 83), especially in view of the variance for which provision is made in the Syracuse Zoning Ordinance (*Matter of City of New York* [*Inwood Hill Park*], 230 App. Div. 41, affd.

256 N. Y. 556), and the existence of the three railroad leases, because they were in existence at the time of the taking, even though they had been canceled prior to the conclusion of the hearings, still their failure to do so apparently had no effect on their valuation before the taking, because in their first report, although this evidence was considered, they fixed that value at $19,000, and in their second report, although excluding it from consideration, they again fixed such value at $19,000. Although it may well be that they were required to consider this evidence it is entirely another thing to say that they must accord value to the elements disclosed by it. That was a matter for the judgment of the Commissioners. Concededly, the three leases had been canceled even at the time of the first report. (*Matter of Rapid Transit R. R. Comrs.*, 197 N. Y. 81.) There is nothing in the record to show that the condemnation caused the railroad to cancel the three agreements. Very probably, since the continuance of these agreements was at all times tenuous, depending entirely on the will of the railroad company, the Commissioners attached no value to them. The same is true as to the possibility of erecting a modern gas station, despite the provision in the zoning ordinance for a variance to permit the erection of such a station. It must be borne in mind that the whole area was already well supplied with gas stations. Again there was proof which would have justified the Commissioners in reaching the conclusion that the defendant's property, even before the taking, was not really suitable for the expenditure of additional money required to erect a modern gas station. Moreover, defendants' proof of value, based on the erection of a modern gas station in charge of a competent operator, was, to say the least, quite speculative. (*N. Y. C. R. R. Co.* v. *Maloney*, 234 N. Y. 208; *Matter of Niagara, L. & O. P. Co.* v. *Horton*, 231 App. Div. 402.) The Commissioners were not bound to credit defendants' witnesses on this feature. They again could use their own judgment. Under these circumstances the failure of the Commissioners to consider this evidence in making their second report, was seemingly harmless.

(8) The Commissioners properly disallowed damages because of the relocation of the light pole situated, before the taking, on leased land, no part of the easement area. There is no proof that the condemnation in any way necessitated this relocation.

(9) Damages by reason of the obstruction of view of defendant's property from the elevation of the railroad was not an element which could be considered in determining consequential

damage. The elevation was entirely upon railroad lands. (*Matter of Grade Crossing Comrs. of Buffalo*, 209 N. Y. 139; *St. Peter's Italian Church Syracuse* v. *State of N. Y.*, 261 App. Div. 96.)

(10) Although plaintiff urges that the award is excessive and the defendants that it is inadequate, it seems, from a consideration of the whole record, a reasonable one. The total assessed valuation of this property for the year 1939 was $10,000, broken down into land $6,000, structures $4,000. While it is true that the easement area affects the front end of this property abutting upon the street proper, still the defendant oil company has the remaining land left. It had torn down most of the old buildings at the time the two awards were made. It has the legal right to use the easement area for every purpose not inconsistent with the public right therein. It has the fee of its entire property left burdened only with the easement on the front and extending into it from the street line proper, five feet on the south side and eight feet on the north. Under such circumstances an award of $8,000 was not inadequate nor excessive.

The orders should be affirmed, without costs of this appeal to any party.

All concur, except DOWLING, J., who dissents and votes for reversal and for granting a new hearing and trial on the ground that material items of damage were proved by the property owners for which no award was made by the Commission. Present — CUNNINGHAM, P. J., TAYLOR, DOWLING, McCURN and LARKIN, JJ.

Orders affirmed, without costs of this appeal to any party.