Harris, J.
The plaintiff, The New York Central Railroad Company, brought this proceeding to condemn certain real property in the city of Syracuse for the purpose of carrying out a direction of the Public Service Commission to elevate its railroad lines running through the city of Syracuse. (Syracuse Grade Crossing Elimination Act, L. 1Ó28, ch. 825, § 8, subd. 1.) Title to the property in question to be taken, known as Parcel No. 316 and being a small portion of a large lot, was, at the time of the bringing of the proceeding, in the defendant Richard F. *533 Harrison; Arlene L. Harrison, as his wife, had a dower interest therein. The defendants Markell, Cascano, Sing and Polhemus were tenants in the property. Mortgage liens on the property are held by the other defendants. The petition beginning the proceeding was served on the defendants on or about November 20,1933, and answers were filed by the defendants Harrison and by the defendants First Trust & Deposit Company and Hancock. The Syracuse Grade Crossing Commission, the Comptroller of the State and the People of the State, as interested parties, appeared and were represented in this proceeding and are represented on this appeal. The answer of the defendants Harrison, First Trust & Deposit Company and Hancock raised an issue to the effect that these defendants had a property interest in other lands and in certain easements not covered by the petition which would be taken because of the work proposed in elevating the railroad line.
At the time of the commencement of this proceeding, the premises of the defendant Bichard F. Harrison, including Parcel No. 316 (which parcel consisted of a triangular piece of land being the northerly corner of the entire property of Harrison and containing about 25 square feet) was itself practically triangular and had a frontage of approximately 29.74 feet on James Street and another frontage of 28.3 feet on North State Street. On the land was a building containing stores and apartments and known as “ Stratford Apartments ”. The building consisted of a basement and six stories above ground; the ground floor was, arranged for six stores (one on James Street, one on North State Street, and four facing the railroad) and the other floors were divided into living apartments which were sixty-five in number. With the exception of the frontage on North State Street and James Street, the outside boundary of Harrison’s property, approximately 110 feet, was the prdperty of the plaintiff. There were fire escapes on the northeasterly side of the building which faced the railroad property, and also on that side there was a sidewalk used as a means of ingress and egress to the stores on the northeasterly side of the building and to the basements in the building. The inside or southeasterly side of the property, except for recessions used as airshafts, adjoined the wall of an adjoining building and in part it was bounded by a vacant lot ownéd by some other person. The heating plant and boiler room of the building were located under James Street at a place adjoining Parcel No. 316. There were two entrances to the upper floors of the building from the street, one on James Street and one on North State Street. *534 On the railroad property northeasterly of the apartment house and of the sidewalk on the northeasterly side, were the tracks of the former West Shore Eailroad, then and now owned by the plaintiff. The trains passing over these tracks before the elevation were in most number freight trains. The projected elevation of the tracks northeast of the Harrison property and crossing James Street and North State Street, as at the time of the bringing of this proceeding and as now constructed, has a clearance of approximately fifteen feet above street level with girders on the side twelve feet in width, so the elevated structure was planned to be and is twenty-seven feet above street level, on which elevation, the main traffic of the New York Central going through the city of Syracuse is now routed; the daily operations of such trains average approximately thirty trains eastbound and thirty trains westbound. Such operations must of necessity result in the emission of smoke, steam and cinders.
The issue raised by the answer of the defendants was whether or not the defendants owner and lienors were to be compensated by the railroad plaintiff for certain easements of light, air and access; this question depended on who was the owner of the land which lay between the railroad tracks and the northeast face of the building, and whether the defendants owner and lienors had title to the portion of the street occupied by the heating plant and boiler room, the use of which would be destroyed by the elevation of the railroad. In order to dispose ' of such questions and by agreement between the parties, there was brought in the Supreme Court an action for judgment declaring the rights of the parties to this proceeding in and to the premises and easements in dispute. Such proceeding was tried at Special Term, certain facts were determined and certain conclusions of law were made adversely to the plaintiff, but on appeal the judgment of the Special Term ivas modified on the law and on the facts. (See Harrison v. New York Central R. R. Co., 255 App. Div. 183, affd. without opinion, 281 N. Y. 653.) In brief, the judgment rendered on such appeal held that beginning with the northeasterly line of the building itself the premises northeasterly thereof, insofar as this proceeding is concerned, belong to the plaintiff herein, The New York Central Eailroad Company, and that the defendant owner had and has no rights in such property. The judgment further held that the plaintiff there (defendant owner here) had no right to maintain the heating plant and boiler room in James Street and was not entitled to compensation for the destruction *535 of such heating plant and boiler room, nor for easements of light, air and access interfered with by the elevation of the railroad on its own property and northeast of the northeasterly building line of the Stratford Apartments. Such judgment further declared that the easements for which the owner and lienors of the property were entitled to compensation were the easements of light, air and access which the plaintiffs there enjoyed at the time of the beginning of the proceedings in James Street and in North State Street. In the action of Harrison v. New York Central R. R. Co. (255 App. Div. 183, affd. without opinion, 281 N. Y. 653), the parties therein had stipulated (p. 190): “ That after entry of final judgment and after expiration of time to appeal from final judgment in this action the above mentioned petition and judgment in said condemnation proceedings shall be amended so as to include therein as the property condemned and for which compensation is to be made any additional lands, rights, interest or easements which may be determined in this action to be owned by the plaintiffs herein and which will be taken, acquired or injured by the said The New York Central Railroad Company ”. On the filing of the petition and the raising of the issues by the answer in this proceeding, judgment was rendered in favor of the plaintiff and against the defendant granting the prayer of the petitioner for the condemnation of the fee title of Parcel No. 316, and ordering the appointment of three commissioners to determine the compensation to be paid for such premises. Such judgment further provided that the plaintiff be authorized and permitted “ to enter immediately upon said real property, additional lands, rights, interests and easements, and devote same temporarily to the public use specified in the petition without making any deposit pursuant to Section 24 of the Condemnation Law * * * and any award made herein shall carry interest thereon from the date of the entry of the plaintiff upon such property * * The commissioners were directed that they should meet, take their oaths of office and then adjourn subject to the further order of the court; the object of the last described direction was to await the determination of judgment in the declaratory judgment action.
Following judgment in the action for declaration of the rights of the parties and pursuant to stipulation therein, on application of the plaintiff, Special Term ordered amendment of the petition for condemnation and of the judgment rendered on such petition December 4,1933, so as to provide in the amended judgment for the condemnation of Parcel No. 316: “ Also such *536 easements or parts thereof, if any, of light, air and access over and across said James Street and North State Street owned by the defendants, Richard F. Harrison, Arlene L. Harrison, First Trust & Deposit Company and Marion M. Hancock, which have been cut off by the portion of the elevated railroad owned by plaintiff and West Shore Railroad Company, now located in and across such streets and which plaintiff is obliged to condemn and pay for in this proceeding by reason of the final judgment entered in the Clerk’s Office of Onondaga County on August 7, 1939, in an action in which such defendants were the plaintiffs and The New York Central Railroad Company, Syracuse Grade Crossing Commission and County of Onondaga the defendants.” Special Term then ordered a meeting of the commissioners and their determination of the compensation to be awarded the defendants owner and lienors by the plaintiff in this proceeding. Such amendment to the judgment was granted November 6, 1939.
The commissioners designated by the Special Term judgment of December, 1933, then proceeded with their duties, viewed the premises and took testimony on behalf of all of the parties appearing as to the value of the premises taken by reason of the judgment in this proceeding as amended. Testimony of value was given by expert witnesses and included assessed valuations. Such commissioners (to which reference will be made hereinafter as the first commission) made a report to Special Term under date of March 21, 1942. This report placed the value of the property of the defendant Richard F. Harrison, before the taking in this proceeding, including the building thereon, at $145,000, and the value of the remaining property, “ after taking Parcel No. 316 and the easements of light, air and access over and across James Street and North State Street * * * [at $21,000, and contained the conclusion] that the compensation which ought justly to be paid to the owner of the property * * * and to the lienors * * * is the sum of $124,000, with interest on said sum from December 20th, 1933, at the legal rate or rates.” On the coming in of the report at Special Term, the defendants owner and lienors moved for the confirmation of the report. The plaintiff opposed such confirmation, and after submission of that motion to confirm the Special Term denied the motion and ordered that the matter be sent back to the same commissioners for further consideration and directing the commissioners to file a further revised report showing what evidence had been disregarded by the commissioners, what *537 evidence was relied upon for the conclusions reached by the commissioners, what rule was applied in determining the value of property before and after the taking and the damage resulting to the remaining property, and what elements were chiefly relied upon for the decision reached by the commission. Such order of the Special Term is based on its decision in which the Special Term found fault with the report to the effect that the report was lacking in clearness and definiteness, did not show the bases of the conclusions and did not show that erroneous evidence was received and that the proper consideration was not given to the fact that a part of the elevated structure was erected on land owned by the plaintiff and in which land the defendants had no easement. Such decision stated that the report of the commission, that it had not considered damage from the use of the railroad land by the railroad, could not be reconciled with the amount of the award. The first commission resumed its task; two of the commissioners fell ill, one died, then another died, and the third commissioner resigned; all these occurrences being shortly after the return of the task to the first commission by Special Term. Then, by order dated July 7, 1943, the Special Term designated a new commission of three members and ordered them to proceed to rehear the matter and to ascertain and determine the compensation to be made for the property taken in this proceeding. By reason of the provisions of such order and by later stipulation of the parties, a major part of the testimony taken by the first commission was read by the second commission, and further testimony was given practically along the same lines as the testimony before the first commission. The second commission viewed the property and after hearing the testimony made its report under date of December 15, 1943. The report was more voluminous and in its language more definite than the report of the first commission, although insofar as this is concerned this court can see no reason why the report of the first commission was a subject of criticism.
The second commission, saying that it did so, after taking into consideration the question of title involved in the ownership of the adjoining railroad property and involved in the lack of ownership by the defendant Harrison of the property where the heating plant and boiler room were located, and considering the rental value of the property and the other proof before them, found the fair value of the Harrison property, before the taking on December 20, 1933, was $162,000; and that its value, after the taking, was $19,000, and concluded that the *538 compensation to the owner and lienors of the property should be fixed at $143,000, with interest thereon at the legal rate or rates from December 20, 1933.
Testimony before both commissions as to the 1933 assessed value of the premises, was land $59,100, building $95,000. One expert witness called on behalf of the defendant placed the sound value of the building on December 20, 1933, at $187,397, and another expert called by the defendant placed the value of defendant’s land as of the same date, December 20, 1933, at $77,200, and the value of the entire property on that date at $257,000. One of the plaintiff’s experts placed the reproduction value .of the building at $172,829.73, and the sound value of the building at $51,848.92; another of plaintiff’s expert witnesses placed the reproduction value of the building at $175,371, and the sound value at $49,980. Other experts sworn by the plaintiff placed the fair market value of the entire property, before the taking on December 20, 1933, at $46,000.
So far as the finding of both commissions as to the value of the property is concerned, both plaintiff and defendants are in substantial accord that, if the building were razed (as it subsequently was) the value of the property left (usable only for parking purposes) was from $19,000 to $21,000. The first commission place this after value at $21,000; the second commission place it at $19,000.
The report of the second commission was filed with the Special Term. Subsequently a motion was made by the defendants to confirm the same and a motion made by the plaintiff that the Special Term should refuse to confirm the same. After a hearing on these motions, the motion of the plaintiff was denied, and that of the defendants granted, and the report was confirmed by an order of the Special Term dated December 29, 1945. On such dispositions of these motions, the Special Term wrote a long opinion which, in effect, stated that the second commission, from the viewpoint of the Special Term, had fully performed its duties as to the contents of its report and had reached the correct determination of facts and conclusions. The order and judgment confirming the second report provided that the award, including interést, costs and allowances, should be docketed as a judgment against the plaintiff. Subsequent motions were made to resettle such order of December 29, 1945, with the result that such order was resettled so as not only to grant the motion to confirm and approve the report, but to further provide that the judgment entered against the plaintiff in favor of the defendants “ be paid, in the first instance by *539 the People of the State of New York out of the proceeds of the Three Hundred Million ($300,000,000) Dollar bond issue of the State of New York for the elimination of railroad grade crossings, upon a voucher duly approved pursuant to Chapter 825 of the Laws of 1928, and the Comptroller of the State of New York is hereby ordered to pay the amount of said judgment with interest thereon from the date of entry ”, and further providing that the State of New York pay the fees of the commissioners and certain necessary expenses of the plaintiff. Such resettled order also directed the clerk to correct the judgment by reducing the amount of interest therein contained so as to accord with the provisions of section 16 of the State Finance Law. Final judgment was entered on such resettled order and it is from such resettled order and amended judgment that appeal is taken here.
The appeals of the parties are as follows: The plaintiff appeals on the ground of excessiveness of the award and on the further ground of errors of law made by the commission and Special Term in reaching its conclusions as to damages. The defendants owner and lienors appeal from that portion which ordered the judgment to be paid in the first instance by the People of the State of New York and directed action by the Comptroller of the State of New York. The Comptroller of the State of New York and the People of the State of New York appeal from that portion of the resettled order and amended judgment both on the ground of excessiveness of the award and on the ground that the directions for the payment in the first instance from State moneys and for action by the Comptroller are erroneous in law. The Syracuse Grade Crossing Commission appeals from the resettled order as it may be affected by the same.
We may not set aside a finding of value unless such finding is based on an erroneous theory of law, or an erroneous ruling as to evidence, or because consideration has not been given to the relative weight of testimony and the value arrived at is excessive or inadequate. (Matter of City of New York [Newtown Creek], 284 N. Y. 493, reargument denied, 285 N. Y. 613; Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583.)
Of course, the primary question to be considered and disposed of on this appeal is as to the propriety of the amount of the award for compensation made by the second commission and confirmed by Special Term. To determine this question, there must be borne in mind that the task of the commission was to *540 determine the value of Parcel No. 316, the consequential damages, if any, resulting from the taking of such parcel, and the value of the easements of light, air and access over James Street and North State Street, which were the property of the defendants owner and lienors and which were taken, injured and damaged by the plaintiff; as to whether or not in reaching the amount of its award for these two items the commission followed and applied the appropriate rules of law. The plaintiff asserts that the commissioners erred in two respects: The commission determined and reported that Parcel No. 316 and the easements over James Street and North State Street were taken by the plaintiff at one time, to wit: on December 20, 1933. The plaintiff urges that there were two takings, one of Parcel No¡ 316 at the time of the filing of the original petition and the entry of the original judgment, and the second, that the easements were not taken until the amendment of the petition and the judgment in this proceeding after the determination of the action for declaratory judgment in Harrison v. New York Central R. R. Co. (255 App. Div. 183, affd. without opinion, 281 N. Y. 653). On this contention and issue, the result must be in favor of the defendants owner and lienors. The elevation of the railroad was one job and one structure planned and provided for prior to the filing of the petition in condemnation. It is true that the question as to just what easements were affected was left to the result of the action for declaratory judgment, but that action was for the purpose of clarifying the issues as to what was taken and the taking itself both of Parcel No. 316 and the easements was as of the filing of the petition, the entry of judgment thereon and the taking of oaths by the members of the original commission.
: The plaintiff railroad company further contends on this appeal, and had contended at Special Term, that compensation has been awarded, but should not have been awarded, the defendants owner and lienors for interference with easements by the structure of elevation placed on the plaintiff’s own land abutting and northeast of the property of the defendants owner and lienors.
The record affords difficulty in determining the question raised by the plaintiff as to whether the award included damages resulting from the use of its own property. In both reports the commissions stated that they fully considered the right of the railroad to elevate on its own land and that they have determined the value of the Stratford property with full knowledge of such rights of the abutting plaintiff. Despite this, it can be *541 gathered from the record that proper attention was not given to the effect of the use of such rights by the plaintiff to elevate its tracks on its own property and to run trains thereon without liability to the defendants.
As has been told above, the only piece or parcel of real property taken in this proceeding was a small parcel (No. 316) about 25 square feet. This parcel was to be used and was used to afford support for a portion of one pylon of the elevated structure, the remainder of which pylon rested on James Street in the vicinity of the heating plant and boiler room. The ordinary method of figuring the amount of award, where a portion of property is taken, is to value the entire property at the time of the taking and to deduct therefrom the value of the property left, the difference being the amount of compensation for the portion taken. (Matter of City of New York [Newtown Creek], 284 N. Y. 493, reargument denied, 285 N. Y. 613.) This was done by the two commissions insofar as Parcel No. 316 is concerned.
Now comes the consideration of the value of the easements of light, air and access which the defendants enjoyed at the time of the beginning of the proceeding in James Street and in North State Street. These are the easements with which the commission, or commissions, or Special Term, should have concerned themselves in determining the award of compensation to be made to the defendants owner and lienors. In other words, what was the value of the damage or injury which came to the defendants by consequence of the structures erected across North State Street and James Street interfering with access to the property, its use of light and its use of air.? These easements were property rights and could be valued in money. (Syracuse Grade Crossing Comm. v. Wellin Oil Co., 268 App. Div. 627, affd. without opinion, 295 N. Y. 738; St. Peter’s Italian Church Syracuse v. State of New York, 261 App. Div. 96; Adirondack Power & Light Corporation v. Evans, 226 App. Div. 490.) The commissions and the Special Term chose to use the following method of determining the value of the easements : There was fixed the value of the property at the time of the taking and before the taking. The first commission fixed that value at $143,000; the second commision fixed the value at $162,000, and this latter figure was approved at Special Term. As has been indicated above, there was no serious difference as to the value of the property as a parking lot after the building Avas razed, the first commission placing that at $21,000, and the second at $19,000. As to the valuation fixed by the second *542 commission, which is the one now under review, the commission had before it its own view of the property, the testimony of expert witnesses with a range in value as above stated, and the assessments and its own judgment. In reaching its determination as to the value before taking, it apparently came close to approving that valuation' at the assessed valuation. Deducting the $19,000 from the $162,000, it determined that the award for compensation should be $143,000, which would include the amount awarded for Parcel No. 316 and consequential damages, if any,- for its taking, and the value of the easements belonging to the defendants owner and lienors over James Street and North State Street. ■ From the record, it must be concluded that in using these figures the commission followed an erroneous theory. The commission and the Special Term held, in effect, that the change of railroad elevation resulted in the entire destruction of the use and value of the building. Some of that destruction at least, and maybe in a very large part, must have come from the result of the construction and use of the elevation by the railroad on its own property abutting the northeasterly side of the defendant’s property. The task of the commission was to place its time of valuation as of the time of taking, this being when the work was not completed. The record shows that much testimony was taken and received as to what was happening to the building and its use because of the crossings on James Street and North State Street after the elevation of the railroad was completed and trains were running thereon. In determining the value as to the time of' taking of the easements and consequent damage to the apartment and store building, the commission should have had in mind the elevation of the structure and the running of the trains both over the plaintiff’s own lands and the two streets. Doing this, the commission should have realized that the structure on the railroad’s own property, and the use thereof, would result, and did result, in the cutting off of the property from all access on the railroad line, that there could be no approach to the stores from that direction, nor to the basement, entrances to which were on railroad property; smoke, cinders, ashes and dust would enter the upper floors of the building from trains passing on that portion of the elevated structure and standing on the railroad’s land just the same as these emissions came when the same trains passed over the James Street and North State Street portion of the structure. For these interferences with access and with easements which came from the use of its own property, there was no liability to the defendants on *543 the part of the plaintiff; and yet these interferences, injuries and damages must have reacted seriously on the Stratford apartment structure itself and its value, both as to apartments and stores, and necessarily must have caused a good part of the reduction in value of the property of the defendants owner and lienors. The true measure of damages could not have c been the difference between the value fixed by the commission as of December 20, 1933, and the value after the razing of the property. Although the commissioners in their report claim that they took into consideration the existing conditions on the railroad property and the use of same, the record does not bear them out in this. Under all the circumstances the amount awarded is grossly excessive and clearly can only be sustained on the basis that the damage by reason of the operation of the entire structure entered into the determination of the commission.
The result so far has been, and is now, to require that this proceeding again go to Special Term so as to afford consideration by a commission in accordance with the viewpoint expressed in this opinion. Thus should result "a proper valuation of the injury and damage to the easements over James Street and North State Street which the defendant owner and lienors enjoyed in the property prior to the talcing in this proceeding.
The other two questions — the rate of interest to be applied by the commissions, and the form of judgment used by Special Term — now remain to be discussed.
The award and judgment should be against the plaintiff railroad alone (N. Y. Const., art. VII, § 14; Syracuse Grade Crossing Elimination Act, L. 1928, ch. 825, § 8, subd. 1; State Condemnation Law, § 17) that being the party who brought the proceeding. It is true that eventually the State, the county and the plaintiff will share in the payment of the award, but the provisions of the statute provide for certain action on the part of the State Comptroller that is to be taken after-the judgment is entered, and such action on the part of the State Comptroller was not under cognizance of Special Term.
As to the rate of interest to be computed on the award for compensation, there is no doubt but that in the judgment against the railroad company the defendants would be entitled to the legal rate, to wit: six (6%) percentum, on the amount of such judgment from the time of the taking. Section 16 of the State Finance Law has no application to the judgment in the present litigation between the plaintiff and the defendants. By stipulation in the declaratory judgment action, it was provided *544 “ that any award made in said condemnation proceedings shall carry interest thereon from the date of filing of the oaths of office of the above mentioned commissioners of condemnation.” There is to be read into such stipulation that the legal rate is the one to be used in this proceeding.
Whether or not the State of New York, or any other public authority, should bear and repay to the railroad any portion of such interest, or any portion of the expenses of any of the parties hereto, need not he considered now, because, as has been indicated above, the judgment is to be entered against the plaintiff railroad alone; the apportionment of what is to be paid by the State, or any other public authority, is for later determination, after the entry of judgment. (N. Y. Const., art. VII, § 14; Syracuse Grade Crossing Elimination Act, L. 1928, ch. 825, § 8, subd. 1; State Condemnation Law, § 17.) '
The resettled order and the amended judgment, from which appeals have been taken, and all parts thereof, should be reversed and this matter remitted to the Special Term to proceed as indicated in this opinion.
All concur, except Taylor, P. J., not voting, and McCuru, J., who dissents and votes to modify the resettled order so as to strike out the provision that the judgment docketed against the plaintiff be paid in the first instance by the State. Present — Taylor, P. J., Harris, McCurk, Larkin', and Love, JJ.
Resettled order and amended judgment reversed on the law and facts and matter remitted to the Special Term to proceed in accordance with the opinion. [See 273 App. Div. 805.]