In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Relative to Acquiring Title to Real Property in the Hunts Point Area of the Borough of The Bronx, as a Site for the New York City Terminal Market. VICTOR DE NIGRIS et al., Respondents-Appellants; DE NIGRIS REALTY CORP. et al., Appellants.

First Department, December 12, 1963.

*Irving Genn* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellant-respondent.

*Alfred D. Jahr* of counsel (*Jahr & Abberman,* attorneys), for Victor De Nigris and others, respondents-appellants, and for De Nigris Realty Corp., appellant.

*Harold T. Garrity* for 750 Edgewater Road Corp. and others, respondents-appellants, and for John R. Flick, appellant.

STEUER, J. Damage Parcels 121, 122, 123, 124 and 128. Although both sides claim in their respective appeals that the land value found by the court is incorrect, they each concede that there is credible evidence upon which the court could have reached the conclusion it did. The concessions are not in so many words but are necessarily involved in the arguments made to show what increments the court allowed.

The site in question was improved by six buildings designated in the proceeding by the letters A to F. Building F was the dominant structure. It was devoted to the manufacture of stone monuments. The other buildings surrounded it and two were used wholly in connection with it, housing subsidiary activities such as office space, heating and the like. The other three were largely rented to tenants for rental income purposes. Claimant took the position that the main building was a specialty and that the others were adjuncts to it and should be evaluated as being in the same category. In accord with this theory claimant offered no proof as to the economic value of any of the buildings and relied on its proof of sound value, namely, reconstruction cost less depreciation.

As to the two buildings which were used solely in connection with the monument building, we would be inclined to accept this theory, provided the premise — that the main building was a specialty — is valid. An examination of the proof on this subject does not support the contention. The building is a large structure consisting entirely of walls and a roof made of conventional materials. Its only feature with any claim to specialty was an installation of parallel overhead rails to support a traveling crane. Though the court found the building to be quite unusual, there can be no doubt that it differs in no material respect from many structures in the city used for storage of materials or in the processing of heavy, bulky materials. As this building would produce income if leased for any such operation, it is not a specialty (*People ex rel. Hotel Paramount Corp. v. Chambers,* 298 N. Y. 372; *Matter of City of New York [Maxwell],* 15 A D 2d 153, 171). It follows that economic value is the proper test. The only evidence of such value is to be found in the testimony of the city's experts. There is nothing inherently improbable in that testimony, and the detail given, plus

the close adherence to actual figures of expense and income where these were available, makes it acceptable. Adding these figures to the land value found by the court, the result is $213,000, and the award is reduced accordingly, with costs to the city.

Damage Parcel 5. This is a waterfront property with structures suited for the manufacture of concrete block. The property is located at 750 Edgewater Board, Bronx. We find no error in the findings of the court as to land or building values per se. Claimant asserts error in failure to give value as structures to the paving of the lot with concrete, and to a waterfront installation claimed to be a dock. As to both, the court gave added land value for their presence. As to the concrete paving on that portion of the property which was not occupied by buildings, we believe this to have been the proper procedure.

The difficulty in connection with the other structure arises mostly from a determination of its nature. Claimant insists that it is a wharf while the city classifies it as a bulkhead. Bulkheads and wharves are the result of construction along the water's edge paralleling the shore. To determine in which classification the structure comes, the purpose and use and, to some extent, the different method of construction characteristic to each, must be considered. A bulkhead is used to firm the boundary of the land to prevent its being engulfed into the water by resisting the pressure of either land or water. The purpose of a wharf is to facilitate passage for persons or goods between the land and vessels in the water. A wharf characteristically consists of a platform on piles, beneath which platform the water flows. A bulkhead consists of fill material. Here the structure was a concrete slab resting on piles driven into the water, the space beneath the slab solidified by fill to the exclusion of the water. The record shows extensive use of the concrete covering for the mooring of scows and barges and for unloading them.

If this construction is to be deemed a bulkhead, the method of attributing value adopted by the court, namely, by allowance for the amount by which it enhanced the value of the upland, is correct (*Matter of City of New York* [*Newton Creek*], 284 N. Y. 493). This would be the difference between the value of the land in its raw state and as so improved (*People ex rel. Lehigh Val. Ry. Co.* v. *Burke*, 247 N. Y. 227; *First Constr. Co.* v. *State of New York*, 221 N. Y. 295). A different consideration exists in the case of a dock. This would be a structure. And it should be appraised as such.

From what is stated above, it appears that the structure served a double purpose and its construction reflects that situa-

tion. The city's expert appraised the structure as to its divisible features. That portion which might from its use be regarded as a dock, he called "the slip"; and that portion solely functionable as the bulkhead, he called the "sea wall". The reconstruction cost of the former, less depreciation, he calculated at $31,500. The claimant respected his figures.

While a dock is not such an extraordinary structure that reproduction cost should in all cases be the measure of value (*Brainerd v. State of New York,* 74 Misc. 100, 108), in this case both sides limited their proof to this measure of damage. In the circumstances, the court should have made allowance accordingly. Claimant's award should be increased by $31,500 to a total of $625,500, with costs to claimant.

In both cases there were included awards for fixtures. We find that the court followed well-established procedures and find no comment necessary on the objections made by the parties.

Damage Parcels 83, 84, 89, 90 and 91. We find no error in the awards made by the court, and these are affirmed, with costs to the city.

Damage Parcels 187–201. In these cases the court unfortunately lumped the award for buildings and fixtures. This prevents an adequate review. The matter is remanded without costs to Trial Term to make new findings as to land, buildings and fixtures (*Matter of City of New York [Oakland St.],* 10 A D 2d 865). While we do not pass on the value assigned to the land, it would appear that the award made does not give proper consideration to the price paid by the claimant when he acquired the property (*Matter of City of New York [Val. Stream, etc.],* 152 App. Div. 422; *Matter of City of New York [Marshall],* 8 A D 2d 365; *Matter of City of New York [Maxwell],* 15 A D 2d 153, 162, *supra*).

The decree should be modified in regard to Damage Parcels 121, 122, 123, 124 and 128 to reduce the award to $213,000, with costs to the city against claimants; in regard to Damage Parcel 5, to increase the award to $625,500, with costs to claimant; in regard to Damage Parcels 187–201, to remand to Trial Term for further proceedings in accord with this opinion; and in all other respects affirmed, with costs to city against claimants in Damage Parcels 83, 84, 89, 90 and 91.

Rabin, J. P., McNally, Stevens and Witmer, JJ., concur.

Decree unanimously modified in regard to Damage Parcels 121, 122, 123, 124 and 128 to reduce the award to $213,000, with costs to the city against claimants; in regard to Damage Parcel

5, to increase the award to $625,500, with costs to claimant; in regard to Damage Parcels 187–201, to remand to Trial Term for further proceedings in accord with the opinion herein; and in all other respects affirmed, with costs to city against claimants in Damage Parcels 83, 84, 89, 90 and 91. Settle order on notice.