In the Matter of the Application of THE CITY OF NEW YORK, Appellant, Relative to Acquiring Title Wherever the Same Has Not Been Heretofore Acquired for the Same Purpose in Fee to the Real Property That Shall or May Be Required for the Widening of CHRYSTIE STREET, from Canal Street to East Houston Street; FORSYTH STREET, from East Broadway to East Houston Street; HESTER STREET, BROOME STREET, RIVINGTON STREET and STANTON STREET, from Chrystie Street to Forsyth Street, Together with the Additional Lands to Be Acquired in Connection Therewith, in the Borough of Manhattan, City of New York.*

CHARLES E. HUGHES, JR., and Others, Respondents.

First Department, July 1, 1932.

*Arthur J. W. Hilly, Corporation Counsel*, of counsel [*Joseph F. Mulqueen, Jr., Joel J. Squier* and *J. Joseph Lilly* with him on the brief], for the appellant.

*Clarence J. Shearn* of counsel [*Charles J. Nehrbas* and *Martin Lippman* with him on the brief; *Cook, Nathan & Lehman*, attorneys], for the respondent Charles E. Hughes, Jr., ancillary receiver.

*Charles Lamb* of counsel [*Talley & Lamb*, attorneys for the owners of damage parcels Nos. 1, 150, 237, 338–341 and 377; *Edward J. Dowling*, attorney for owner of damage parcels Nos. 59–62 and 117–119, inclusive], for certain respondents.

* Affd., 260 N. Y. 583.

*Isaac E. Bermant* of counsel [*Henry Herz* with him on the brief; *Skinner & Bermant*, attorneys], for the respondents Hyman Steinberg and others, owners and claimants, etc.

*Samuel L. Teitler* of counsel [*Samuel B. Newman*, attorney], for the respondent Harry A. Voice.

*Harry Lesser* of counsel [*Lesser & Lesser*, attorneys], for the respondent Samuel M. Krauthamer.

*Leslie J. Tompkins* of counsel [*Dominic L. O'Reilly* and *James Regan FitzGerald* with him on the brief], for the respondents as to damage numbers 204, 205.

*Dominic L. O'Reilly* of counsel [*James Regan FitzGerald* with him on the brief; *Egan & O'Reilly*, attorneys, and *A. M. Frumberg*, attorney for Marknew Realty Co., Inc.], for the respondents as to damage numbers 63, 64, 192, 193, 194, 195 and 219, 220.

*Ira B. Livingston* of counsel [*Livingston & Livingston*, attorneys], for the respondent Oscar Lloyd Realty Corporation, owner of damage parcel No. 256.

*Louis Salant* of counsel [*Joseph J. Cunningham* with him on the brief; *Stein & Salant*, attorneys], for the respondents Fannie A. Kallis and another, owners of damage parcel No. 241.

*Barnett E. Kopelman* of counsel [*Alexander Liebman* with him on the brief], for the respondent I. Ptaschnik & Son, Inc., a lessee for damage parcel Nos. 338–341.

*S. G. Nissenson* of counsel, for the respondent Nathan Himowich, as owner of damage parcel No. 342.

*Bernard Sobol* of counsel [*F. W. H. Adams* with him on the brief; *O'Brien, Boardman, Conboy, Memhard & Early*, attorneys], for the respondents The Chase National Bank of the City of New York, as successor to The Equitable Trust Company of New York, as trustee for Beatrice Fiorenza Cenci, claimant for parcels 78, 79, 80 and 81, and United States Trust Company of New York and Donald Harper, as trustees of the estate of Eleanora Lorillard Spencer Cenci, deceased, claimants for damage parcels Nos. 82, 83, 84 and 85.

*Leffert Holz* of counsel [*Benjamin F. Schreiber* with him on the brief; *Schreiber, Buchter & Rathheim*, attorneys], for the respondents Milton Brinn, owner of award for damage parcels 167, 168; 270 Grand Street Corporation, owner of award for damage parcels 233, 234; Gustave Goetz and others, owners of award for damage parcels 239, 240.

*Louis A. Rosenstein* of counsel for the respondent Fanny E. Krooks, owner of damage parcels Nos. 361 and 362.

*Joseph B. Schwartz* of counsel [*Smith & Schwartz*, attorneys], for the respondent Rosi Luca, owner of damage parcels Nos. 69 and 70.

*Ignatius Castelli* of counsel for the respondent Charles Lampedusa, owner of damage parcels Nos. 298 and 299.

*Nathan L. Goldstein* of counsel [*George Schenker* and *Irving S. Dorf* with him on the brief], for the respondents owners of damage parcels Nos. 99 and 100, and 365, 366 and 367; lessees of damage parcels Nos. 257, 375 and 377.

*Francis P. O'Connor* of counsel [*Edward W. Murphy*, attorney], for the respondents James Nash Webb, claimant of damage parcel No. 6; Ernest Plath, claimant of damage parcel No. 31, and George M. Adrian and others, claimants of damage parcels 121 and 122.

*Albert A. Hovell* of counsel [*Sidney A. Clarkson* and *Harry W. McChesney* with him on the brief; *Hovell, McChesney & Clarkson*, attorneys], for the respondent Harry W. Perlman, damage parcel 238.

*Reginald S. Hardy* of counsel [*Conroy & Hardy*, attorneys], for the respondent Kate Rubino, as sole surviving executrix, etc., of Joseph C. Rubino, deceased, owner of damage parcel No. 4.

*Samuel Rubin* of counsel [*William W. Conrad*, attorney], for the respondents Stancar Realty Corporation and others, owners of damage parcels Nos. 113, 114, 120, 258, 314, 315 and 359, 360.

TOWNLEY, J.   The awards made to claimants in the last partial and separate final decree entered in this proceeding on January 12, 1931, are questioned upon two grounds: (1) Upon the ground that there is an inequality between the amounts awarded for the damage parcels contained in this decree and the amounts awarded for the damage parcels which were contained in the first partial and separate final decree entered in this proceeding dated August 6, 1930; (2) it is claimed that the amounts awarded for damage parcels Nos. 153 and 154 (the Libby Hotel property) were excessive.

A brief consideration of the conditions under which the awards for the damage parcels involved in the first separate decree were made demonstrates that the amounts of such awards afford no indication of the value of the other parcels involved in the proceeding and afford no basis upon which a claim of inequality of award can be made.

Prior to the vesting of title about sixty per cent of the owners

involved in this proceeding had made certain so-called option agreements which were to form the basis of the compensation to be paid for their property. Options were given in all on approximately 202 parcels. In June, 1929, a resolution was adopted by the board of estimate and apportionment authorizing the city comptroller to purchase from the respective owners of these various parcels the awards to be made them in the condemnation proceeding to be initiated. While it is true that there was no power in the city to hold the owners to their option agreements, as a matter of fact, when the case came on for trial, these owners either defaulted or came into court and said they were satisfied with the option prices. The corporation counsel also stated to the court on the record that the proper procedure for the option holders was simply to rest on the city's figures. While the options themselves were not made a part of the record, it was stated without contradiction by counsel for one of the claimants that the city's expert had in each instance appraised the option parcels at the amounts stated in the option agreements. Upon the trial no evidence of value was offered as to these parcels excepting the testimony of the city experts whose appraisals were accepted by the court and incorporated in the separate decree which was entered covering nothing but the so-called option appraisals. The consequence of this method of assessing the values in condemnation is that the owners in many cases, who defaulted at the hearing or consented to accept the figures of the city's experts, have received substantially less for their property than has been given to owners who have litigated the issue of value.

It is the claim of the corporation counsel on this appeal that the amounts awarded to the contesting owners are too high because the trial court did not feel itself bound to consider the awards made under the option agreements and the judgment entered thereon as evidence of value in relation to the litigated parcels. There has been no appeal by any of the owners who accepted the city's figures under the so-called option agreements, and the only question is one of evidence. Certainly, the judgment on these awards under the option agreements is not in any sense an adjudication binding upon the contesting claimants, and, as *res inter alios acta*, it is not even admissible in evidence against them. An examination of the corporation counsel's stand, as indicated above, shows that were the option prices to be put in evidence as showing value, they would be unworthy of serious attention since they were not litigated values, but were awards made on consent for reasons entirely personal to the owners of the parcels. In effect, however, the same units of value used in making those awards were before

the court, because the same expert testified for the city in the contested claims and on cross-examination was required to explain his system of assessing the option parcels.

The decree in the contested cases represents the result reached by the trial court after viewing the property, hearing the expert witnesses for the claimants, and after hearing the same character of testimony from the city's expert as was given in support of the option awards. We conclude that while the awards under the options may have been low, we are not concerned with that fact on this appeal and think that the record fully supports the judgment.

The only single award seriously attacked is that made for the Libby Hotel property, damage parcels Nos. 153 and 154. This property consisted of a very extensive bath establishment which was patronized not only by people in the neighborhood but by people from all over the city. Two questions were raised: (1) Whether this establishment was a proper improvement in the locality, and (2) what was the fair value of the improvement. At first, the city conceded that it was a proper improvement. There was some public agitation thereafter, and the trial court had a further hearing at which the city attempted to show that it was not a proper improvement. At this second hearing the city produced four witnesses. Of these four witnesses, three had never been inside of the building and the fourth had never been in any part of it except the lounge on the first floor. None of them had any experience in the operation of Turkish or Russian baths and none of them knew anything about the amount of business done, the number of patrons or the demands for this type of building in that locality, although one admitted that that neighborhood was a bath house neighborhood in which many similar establishments were located. The evidence on behalf of the claimant amounted to a full disclosure of the nature of the building, the number of patrons, the prices that they paid, the popularity of the baths in the neighborhood, and the type of accommodation required by such patrons. The witnesses for the claimants were acquainted with the needs of bathing establishments and gave as their opinion that it was a suitable improvement. The trial court was fully warranted on the record in so holding.

As for the amount awarded, there was a conflict of evidence as to the reasonable value of a building of the type of the Libby Hotel. The city's experts, who testified to the reasonable value of certain parts of the work in the construction of such a building, gave figures which were widely at variance with the figures of the actual cost of the building a short time before the condemnation, which costs were based on contracts awarded after the receipt of com-

petitive bids. There is no reason for thinking that the prices paid under the contracts awarded on those bids were not fair and fully representative of the true market cost at the time the bids were made. The conflict before the trial court was one of speculation based on opinion unfortified by facts, as contrasted with the most satisfactory type of evidence that could be given, namely, the actual cost of this structure at a time not long anterior to the condemnation and before any substantial decrease in construction costs in this city.

Attention has been called to the fact that this venture became involved in financial difficulties and that the mortgage upon the building was subsequently foreclosed. These conditions may readily have resulted from conditions wholly unconnected with any question as to the building being a suitable improvement for the land upon which it was located. Faulty financing, bad management, or any one of a number of causes might easily have brought about this result. This record contains no evidence satisfactorily establishing that this building was not an adequate improvement or that the financial troubles in which the venture became involved were produced by that fact.

We find no error on this record, and the decree so far as appealed from should be affirmed, with costs.

MERRELL and McAVOY, JJ., concur; FINCH, P. J., and MARTIN, J., dissent.

FINCH, P. J. (dissenting). This is an appeal by the city of New York from a final decree of the Supreme Court, New York county, in so far as said decree makes and fixes certain awards for real property acquired in condemnation by the city of New York, and levies assessments therefor. The real property involved was acquired for the purpose of widening portions of Chrystie, Forsyth, Stanton, Rivington, Broome and Hester streets, in the city of New York. The proceeding was a large and difficult one. The decree, however, should not be sustained, because of certain fundamental errors appearing therein.

In the first place, there is an outstanding lack of equality in awards for separate parcels of property similarly situated and obviously of relatively equal value. There is no dispute concerning this discrepancy in the awards.

For example, in block 422 there are eight lots located on the Chrystie street side of the block, numbered parcels 41 to 46, all of the same area and dimensions and all at least one hundred feet distant from the cross streets. The city valued these eight parcels at approximately $15,525 a lot. The court awarded this unit

value for six of the eight lots, but for two of said lots, namely, 53 and 54, awarded $18,000 a lot.

In block 421, on the Forsyth street side, the court adopted the estimate of the city of $17,500 a lot for ten parcels, but allowed $20,000 a lot for ten parcels similarly situated.

In block 418, on the south side of Broome street, the court awarded for damage parcels 215, 216 at the unit rate of $26,500, whereas, for damage parcels 209, 210, 211, 212 and 213, 214, of practically the same area and dimensions and similarly situated, a unit rate of $21,000 was awarded.

The foregoing are but a few of the many discrepancies in the awards. With the exception of Canal street and the north side of Delancy street, there is not a block front in the entire proceeding in which land valuations have not been adopted irreconcilable with other land valuations on the same street.

It is sought to explain these discrepancies in the briefs of the respondents by setting forth that certain of the owners had entered into agreements with the city giving the latter the option to acquire the awards in condemnation proceedings at a fixed price. In such cases, it is alleged, no evidence was offered by the claimant of market value. The city submitted, as the reasonable market value of these lands, the figures agreed upon. These were not controverted by the claimants, and were accepted by the court. It is urged that these figures were not binding upon the owners of contiguous parcels who had not entered into like agreements with the city, and that such owners were entitled to prove, if they could, and be awarded, a higher market value.

The difficulty with the foregoing contention is that the function of the trial court was to determine the just compensation to be made to the respective owners of the property to be acquired. Just compensation means equality of awards for respective parcels of property similarly situated and of relatively equal value. This and this only was the measure for the property to be acquired. The fact that the city had options which they might accept to purchase the awards could have no bearing upon the amount to be awarded except as an outstanding fact showing what owners of more than sixty per cent of the property to be acquired were willing to accept as the value of the property being condemned. Contiguous parcels are not bound by the evidence adduced on adjoining parcels, but in fixing just compensation the trial court could not find separate pieces of property of like dimensions and similarly situated and on the same block, of varying values. Looking at the matter in another way, if the city had in effect purchased a portion of the property, the condemnation as to that portion was a vain

and useless thing. Only in the event that the city was to award just compensation was the work of the court justified. Moreover, this viewpoint is borne out by the record, for only incidentally therein does it appear that there were even existing options to purchase awards. Upon this record the amounts found do not rest upon and could not rest upon options to purchase awards to be made for property to be valued by the court.

All that appears in the record is that the board of estimate and apportionment authorized the comptroller to purchase awards to be made herein, and that a number of property owners offered to sell at certain prices. These offers were neither accepted nor rejected. The city submitted testimony as to the value of all the damage parcels involved, which was consistent throughout and was not predicated upon the aforesaid offers of certain property owners to sell their awards. The owners of these parcels merely expressed their willingness to accept the figures of appraisal of the expert witnesses of the city as the reasonable value of the lands. The court was called upon to fix the market value of all these parcels. Having fixed certain of these values in accordance with the testimony adduced by the city, the court could not disregard these values when considering similar parcels in conjunction with like testimony. To hold otherwise would in effect be turning to the prejudice of the city the fact that a large majority of the property owners were willing to accept as fair and reasonable the appraisals of the city as to the value of the property.

Objection is strongly urged against the award for damage parcels 153, 154, known as the Libby Hotel. The amount awarded was $2,850,000, being $595,000 for the land and $2,255,000 for the building. Shortly before title vested in the city a receiver in foreclosure was in possession and the premises, for which was awarded this $2,850,000, were bid in at an open sale in foreclosure for $75,000 over a mortgage originally for $1,500,000 and at the time of the sale approximately $1,420,000. It is true that a sale in foreclosure is very often not a true measure of real property's worth. There is here, however, a difference of upwards of $1,350,000.

After the trial court had found the value as above stated, an application in due course was made for a rehearing, whereupon the court ordered a rehearing " in the interests of justice, * * * limited to the question whether or not the Libby Hotel building was a suitable and adequate improvement." Thereupon witnesses were called by both sides, who testified *pro* and *con* in general terms only, affirming and denying that the structure was an adequate improvement. Following this hearing the trial court held the structure adequate.

Some confusion seems to have been caused by the language used. Counsel for the respondent says in his brief: " For example, the city might have conceded the general suitability of the building and still contested the amount which it added to the value of the land, *but it did not choose to do this either upon the trial or upon the rehearing* * * *. On the rehearing the city rested its case solely upon the question of suitability. And that issue was overwhelmingly against its contention." I do not so read the contention of the city upon the rehearing. The term " suitability " is not so limited. It not only comprises the general suitability of the building for the locality, but also concerns the value that the building adds to the value of the land. For instance, to contend that a Russian and Turkish bath, with the other conveniences which were here attached, was not suitable in this neighborhood would be absurd in view of the fact that other buildings furnishing like facilities were common to the locality. Such a building might indeed be suitable if on a much less elaborate scale than was the Libby Hotel. What appears clear here is that this building, while suitable in the sense that a Russian and Turkish bath establishment would be suitable for the locality, nevertheless did not add its full structural value to the land because of the very expensive nature of the structure. The trial court holding that the building was suitable sought to add the total structural value to the land. The error was in not recognizing the principle that it is only where a building is a suitable improvement, not only as to kind but as to *quantum*, that the law permits the owner to add the full structural value of the building to the value of the land. It was the overlooking of this principle which produced a result where the loss caused by an error of judgment in creating too elaborate a structure has been lifted from the shoulders of those making the error and shifted to the city. Only when a building enhances the value of the land is the owner entitled, in order to establish just compensation, to prove the value of his land and the value of his building as a structure. As was said by Judge WERNER in *Matter of City of New York (Blackwell's Island Bridge)* (198 N. Y. 84): " In some cases the value of expensive structures may not enhance the value of the land at all. An extremely valuable piece of land may have upon it cheap structures which are a detriment rather than an improvement. A man may build an expensive mansion upon a barren waste, and, in such a case, the costly building may add little or nothing to the total value. In the greater number of cases, however, when the character of the structures is well adapted to the kind of land upon which they are erected, the value of the buildings does enhance the value of the land."

Moreover, upon the rehearing there was error in rejecting testimony offered by the city upon the market value of the land and building as bearing on the inquiry whether the building as constructed was an adequate improvement. Upon the rehearing the city called three real estate witnesses. These were permitted to testify that in their opinion the hotel was not an adequate or suitable improvement. They were not, however, allowed to state the market value of the land and building taken together as bearing on the issue of suitability. Thus the facts upon which the opinion of suitability was based were excluded. In *Matter of City of New York (Inwood Hill Park)* (230 App. Div. 41) this court reversed a decree and remitted the proceeding to the Special Term for rehearing because the Special Term had refused to receive evidence offered by the claimants as to the most profitable use of their property, namely, whether it could profitably be used for apartment house sites. Conversely, in this case the city was entitled to the reception of evidence of value showing inadequacy or unsuitability of the improvement on the property it was acquiring.

It follows that the decree, in so far as appealed from, should be reversed and the matter sent back to Special Term for a new trial.

MARTIN, J., concurs.

Decree so far as appealed from affirmed, with costs to the respondents.