## UNITED STATES v. DELANO PARK HOMES, Inc., et al.

### No. 77.

Circuit Court of Appeals, Second Circuit.

Dec. 29, 1944.

Bernard L. Bermant, of New York City, for appellants.

John C. Harrington, of Washington, D. C., for appellee.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, condemning land for the use of the War Department, near the Town of Hempstead, Nassau County, New York, and awarding compensation; the only question is the amount of the award. The objections to this are three: (1) that the judge appraised the property upon the basis of temporary market conditions: i. e. the difficulty, pending the war, in procuring building materials; (2) that, in the light of the assessed value of the property, the award was "grossly unfair"; (3) that the testimony of an expert witness was allowed to stand, after it appeared upon cross-examination that he had in part based his appraisal upon sales made to the United States under the shadow of condemnation. The property had been plotted for small suburban residences, and some of the adjoining property of which the lots in question were a part, had already been built upon. The "declaration of taking" was filed on December 21, 1942, the judgment of condemnation was entered on March 17, 1943; and from April, 1942, onwards it had been impossible to obtain building materials without obtaining a "priority" from the proper authority. "Priorities" were not given for building within a mile of the airfield to which the condemned lots were adjacent, and of which they were to form a part. Hence it was impossible, while the system of "priorities" remained in force, to use the lots for their intended purpose. The first question was and is whether this should be a factor in appraising the lots for condemnation. The peti-

tioner's witness figured it as a serious depressant and made his appraisal accordingly; the defendant's expert disregarded it (that being the legal position on which the defendants stood); although he did testify that, if it were considered, it would reduce his appraisal by one third. Even after that correction is made, the two appraisals were far apart. The petitioner's expert appraised the lots at $3750; the defendants' at a little less than $12,000. From the last amount it would be proper to deduct about $1200 for the removal of the "top soil" from half the acreage; but even so, the appraisal of the defendant's expert would remain at about $10,800. The court awarded $4140.

■ We cannot agree that the judge should have refused to consider the effect of "priorities." Nobody suggests that an owner whose land is not condemned, has any claim upon the United States because he cannot employ it profitably until the system ends. Yet to appraise the land without any deduction for a period during which it will bring in no income, is to reimburse the owner pro tanto; a discount measured by commuting the losses, de die in diem, is necessary to avoid putting into a preferred class owners whose lands happen to be condemned, as against those who must bear the deprivation without relief. Otherwise condemnation will prove a bonanza. The defendants have been unable to discover a shred of authority to bear out their pretension, except Judge Mayer's decision in National City·Bank v. United States, D. C., 275 F. 855, and Judge Peck's in C. G. Blake Co. v. United States, D. C., 275 F. 861. Both of these do seem to do so; and we affirmed the first in 281 F. 754, and the Sixth Circuit affirmed the second in 279 F. 71. However; we regarded ourselves as bound by the findings of the trial judge, and did not pass upon the merits. The per curiam opinion of the Sixth Circuit leaves us a little uncertain how far they accepted this part of Judge Peck's reasoning. In each case the district court had assimilated the situation to that of a case where the market is upset by temporary variations of supply or demand, and where it is indeed true that the immediate prices are not the proper measure of value. Certainly, when an owner can hold his property until the market recovers, it is unjust to allow him only current prices, for presumably he will wait for a recovery before disposing of his goods. Whether the same reasoning applies when he cannot wait, is

another question; not decided, so far as we know. However that may be, when competent authority has fixed prices at a maximum, or has denied owners some specific use of their property, it is patently a disregard of its authority, either indirectly to allow a higher price on condemnation, or to allow the price to be figured in disregard of the limitation imposed. We overrule National City Bank v. United States, supra, 275 F. 855, and we must respectfully decline to follow C. G. Blake Co. v. United States, supra, 275 F. 861, and, if the affirmance should be taken as covering the point now before us, we must also decline to follow that as well.

■ Coming to the second supposed error, we should hesitate to suppose that the defendants are complaining because the judge limited the evidence of the assessed value of the lots to its effect upon a prospective buyer: i. e. to showing what taxes he will have to pay, if he buys. They unequivocally agreed that it should be so limited, and it would be unfair now to impute to them the intention to repudiate their agreement. We do not so understand them; their reply brief at any rate seems to be confined to a challenge of the petitioner's expert's appraisal, because it was made in the face of an assessment of $21,000. If so, the point is without merit; everyone acquainted with real property, especially in recent years, knows that in locality after locality assessments have no relation whatever to market value. What the situation is in Nassau County did not appear; until it did, it would be preposterous to throw out the testimony of a witness, however far it varied from the assessment.

■ The last error asserted is that the petitioner's expert, in making his appraisal, considered sales to the United States, which were presumably made under pressure of possible condemnation and to avoid the expense of a suit. There is much difference of opinion among courts as to whether evidence of such sales is admissible as such (Orgel, Valuation Under Eminent Domain § 146); but in any case it is hard to see how the question can arise in New York, owing to the doctrine that specific sales are not admissible except on cross-examination, and then to test the expert's opinion. Robinson v. New York Elevated R. Co., 175 N.Y. 219, 67 N.E. 431. However we will assume that expressions such as appear in Re New York, W. & B.

R. Co., 151 App.Div. 50, 54, 135 N.Y.S. 234, and in Re City of New York (Chrystie Street), 236 App.Div. 321, 324, 258 N.Y.S. 243, are to be understood as holding that evidence of such sales would be inadmissible, even if the evidence of sales were ever admissible. Perhaps there may be some justification for saying that sales, made on the eve of condemnation, might mislead a jury, or a judge, because they do not have an adequate background of general acquaintance to weigh them properly, although personally we should be disposed to accept them, so far as § 258 of 40 U.S.C.A. allowed us to do so. Be that as it may, it would be absurd to exclude a qualified expert's appraisal because he had considered such evidence; indeed he ought to consider it; it is part of the data on which his opinion should rest. It is just because he is an expert, and for that reason able to give its proper weight to all data, that he is allowed to appraise the property at all. No court has held, so far as we can find, that his opinion shall not be received because it is so based in part; and we should not follow its ruling, if there were one, unless we had no escape. We cannot do better than to adopt as our own the words of Judge Sibley in Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959, 963, though they were used in a slightly different connection: "When * * * these are referred to by a witness experienced in dealing with such properties in the neighborhood and qualified to have an opinion on values, merely as things in his knowledge which contributed to the opinion which as an experienced man he holds, his opinion ought not to be rejected from evidence, but ought to go to the jury for their consideration of its reliability."

There remains the question whether we should upset the judge's appraisal because it was so near to that of the petitioner's expert. Our review is limited to cases where his appraisal is "clearly erroneous," as we have said in United States v. Lambert, 2 Cir., 146 F.2d 469. Patently we should have no warrant for so holding in the case at bar; we did not see the experts, on whose personal appearance so much depends in an issue like this. There is, however, a clerical error in the judgment; the awards to the two defendants have been reversed, and that must be changed.

Judgment corrected by reversing the awards among the defendants, and, as corrected, affirmed.