In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Relative to Acquiring Title to Real Property, Bounded by West 100th Street, and Other Streets, in the Borough of Manhattan, Required for a Project Known as WEST PARK (MANHATTAN TOWN) SLUM CLEARANCE PROJECT. JAFS REALTY CORPORATION et al., Appellants; MANUEL PADIN et al., Respondents-Appellants, and A. & W. REALTY CORP. et al., Respondents.

*Per Curiam.* The appeal is by the city from the quantum of the awards as to twenty-one parcels in a condemnation proceeding. Cross appeals have been taken by claimants in respect to seven of the awards. The owners of five other parcels have appealed from awards as to which the city does not appeal.

After a careful review of the evidence, we have concluded to affirm the judgment in respect to the amount awarded for land taken in each instance, and to reduce the award for buildings taken in respect to nineteen of the twenty-one parcels as to which the city appeals, and to otherwise affirm the judgment on all appeals.

While we are reluctant to disturb awards in condemnation made by an able and experienced Special Term Judge who has seen and heard the witnesses and viewed the properties, we believe that it is our duty to do so if we find that the Special Term has failed to give the conflicting evidence the relative weight that it should have and thus has arrived at values which are excessive or inadequate (*Matter of City of New York* [*Newtown Cr.*], 284 N. Y. 493, 497). We think that in the present case the awards for buildings were excessive in the instances where we modify, and that this result was effected because in estimating building values based on a capitalization of income method a rate was used that did not duly consider the general depreciated condition of the area. Income remained high in this depreciated section because the property was almost universally used for rooming purposes and space was at a premium. But the neighborhood was substandard, causing the property to be taken for slum clearance. The last factor would have to be a decided influence on the prices that buyers would have paid for these properties.

Accordingly, we modify the decree by reducing the building values as follows:

| Damage Parcel | Special Term's Building Award | This court's Building Award | Total Award (as modified) |
|---|---|---|---|
| 1 | $ 52,000 | $ 47,500 | $ 75,522 |
| 19 | 11,000 | affirm | affirm |
| 21 | 10,500 | affirm | affirm |
| 23 | 18,500 | 15,000 | 25,092 |
| 33 | 46,500 | 41,500 | 66,500 |
| 42 | 39,000 | 35,000 | 51,148 |
| 66–67 | 88,000 | 80,000 | 102,154 |
| 90 | 160,000 | 152,000 | 215,800 |
| 98 | 9,800 | 8,000 | 18,092 |
| 137 | 17,500 | 16,000 | 26,092 |
| 148 | 60,000 | 52,500 | 74,702 |
| 190 | 176,000 | 165,000 | 188,976 |
| 214 | 73,000 | 67,500 | 94,764 |
| 222 | 56,000 | 52,500 | 62,996 |
| 241–242 | 33,500 | 30,500 | 46,644 |
| 254 | 24,000 | 20,000 | 36,766 |
| 282 | 37,000 | 32,000 | 42,020 |
| 303 | 33,000 | 30,500 | 47,452 |
| 304 | 33,000 | 30,500 | 47,456 |
| 318 | 21,500 | 18,500 | 23,196 |
| 369 | 27,000 | 24,000 | 51,705 |

COHN, J. P. (dissenting in part). This is an appeal from a final decree entered in a condemnation proceeding to acquire land in a slum clearance area for a housing project known as Manhattan Town. Title to the property acquired vested in the City of New York on August 29, 1952.

The property runs from West 97th Street to West 100th Street between Central Park West and Amsterdam Avenue, in the borough of Manhattan, City of New York. There were 372 separate damage parcels. Of these only 26 parcels are involved in this appeal. The City of New York has appealed from the awards made for twenty-one damage parcels; cross appeals have been taken by claimants with respect to seven. The owners of five other damage parcels have appealed from awards as to which the city had filed no appeal.

All the properties involved are multiple dwellings operated to produce rental income. In most instances the buildings themselves are old law tenements some of which are now being used for rooming houses.

The court made a statutory view of the premises before fixing its awards and noted that the buildings involved differed in design, improvements, nature of construction and adaptability.

An owner who is deprived of his property in a condemnation proceeding " is entitled to the fair market value of the entire property at the time of the appropriation" (*Matter of City of Rochester* [*Smith St. Bridge*], 234 App. Div. 583, 586). The owner is permitted to prove all factors which have a bearing on the question of value (*Sparkill Realty Corp.* v. *State of New York,* 254 App. Div. 78, 84, affd. 279 N. Y. 656). Where the value of real property is to be determined the court is required to receive and consider " evidence of all elements that can in reason affect the value of the premises together with the opinion of experts upon the subject" (*Heiman* v. *Bishop,* 272 N. Y. 83, 87). There is no single test to be applied in fixing real property values. All rele-

vant factors are to be taken into consideration and given effect to the degree warranted by the other evidence.

In determining the amount of each award made in this proceeding, the court took into consideration the assessed valuation of the land and building, appraisal of capital value by experts for the city as well as by experts for the claimants, estimates of net income, actual rental, rental value, purchase price by the owner and all other lawful elements properly to be considered in fixing an award. In addition, since the proceeding is part of a slum clearing project, the court necessarily gave effect to the deterioration and the general conditions of the area.

Experts for the city and for the claimants utilized the capitalization of income method as the main factor in determining values. Where, as here, income producing property is taken and there is reasonable assurance that the rentals as of the time of taking may be expected to continue for an appreciable period of time, value may properly be ascertained by the capitalization of income. (*Matter of City of New York* [*Seventh Ave.*], 196 App. Div. 451, 456.) The city in its brief concurred in this view, stating that " Since all of the properties on appeal were operated to produce rental income, the best method of valuing them would seem to be income capitalization, 1 ORGEL, *Valuation Under Eminent Domain* (2nd Ed.), § 176."

In fixing the awards, the court employed what has been characterized as a split capitalization method. In most instances, it capitalized the annual net income of the property employing a rate of 9% on side street property including side street tenements, rooming houses and dwellings, a rate of 8% on property fronting on Columbus Avenue and on Amsterdam Avenue, and a rate of 7½% on apartment buildings fronting on Central Park West. From the testimony, the court arrived at a rental value for the year for a given parcel, expenses were deducted, and the net income capitalized at the rates above mentioned depending upon the location of the property and its character. The court fixed the land value, using assessed valuation as a guide, and gave the residual value to the building. A return of 6% was allowed upon the land and the balance of net income was then capitalized at a rate of 7½% or 8% or 9% in accordance with the location of the property.

The city objects to the awards made because of their alleged excessiveness, contending that the court should have accepted the testimony of the city's experts as to net income estimates as a basis for capitalization. The court's fixation of net income was a fact determination. In each case it was based upon the testimony of expert witnesses for the claimant and for the city as to gross income, operating costs and net income. Testimony of expert witnesses is not binding on the court but is merely advisory. (*Matter of City of New York*, 222 App. Div. 554, 559, affd. 250 N. Y. 588.) In the light of all the evidence, the court was fully warranted in discarding the city's net income estimates as too low.

Another objection by the city with respect to the awards seems to rest upon the fact that the parcels were purchased by claimants at amounts substantially below the awards made by the condemnation court. Of the twenty-one parcels in this category, twelve were purchased three to five years prior to the date of vesting. Valuations must be made in the light of conditions as they exist at the time of vesting and not those that prevailed three to five years prior thereto. (*Matter of City of New York* [*Vedbel Corp.*], 282 App. Div. 225.) The remaining nine of the twenty-one damage parcels in which the city is appellant, were purchased by claimants one to two years prior to the date of taking. While these purchases were closer to the date of vesting, the prices

paid are of no greater evidentiary value than the amounts paid for twelve parcels purchased three to five years before and such proof is subject to the same criticism. Moreover, these purchases do not conclusively establish values even though they might have been bona fide sales. For whatever evidentiary value they may have, they are to be considered with all of the other elements. Of more probative value in this case were the purchases of some of the damage parcels by the city after this condemnation proceeding was instituted. The prices paid in themselves warrant the awards made for the damage parcels appealed from by the city. In many instances prices paid by the city to claimants were far in excess of those paid by claimants for the property. Such testimony was before the court during the proceeding and supplies ample support for the contention that the court should give some consideration to that evidence, but it is not necessarily bound by evidence of such sales.

As to the appeals by claimants, an examination of the testimony demonstrates that the awards fixed by the court in each instance were in accordance with legal requirements, were supported by the testimony and were entirely adequate.

There is no showing here by the city as appellant or by the claimants as appellants that the fixation of damages was based upon any erroneous theory of law, or that there were erroneous rulings in the admission or exclusion of evidence. Nor is there any showing that the Special Term failed to give to conflicting evidence the relative weight which it should have been accorded, or that the awards are clearly wrong, or such as to shock the sense of justice of the court. It has repeatedly been held that in the absence of such proof, an appellate court may not substitute its judgment of damages for that of Special Term. (*Matter of City of New York* [*Newtown Cr.*], 284 N. Y. 493, 497; *Matter of City of New York* [*Neptune Ave.*], 254 App. Div. 690, affd. 280 N. Y. 604; *Matter of City of New York* [*Chrystie St.*], 236 App. Div. 321, 324, affd. 260 N. Y. 583; *Matter of City of New York* [*64th Ave.*], 279 App. Div. 600; *New York Central R. R. Co.* v. *Harrison,* 272 App. Div. 531, 539; Jahr on Eminent Domain [1953 ed.], § 281, p. 428.)

The rule is well settled that this court will not interfere with the quantum of the awards where there is competent evidence to sustain it. The awards here were made on the basis of all the evidence and in accordance with legal requirements. No unlawful elements of damages were taken into consideration nor were there any lawful elements ignored. Consequently no legal basis exists for disturbing the amounts awarded. Any change with respect to the amount of any award would be nothing more than a substitution of this court's judgment for that of the Special Term.

The final decree as to the awards appealed from should be affirmed.

Callahan, Breitel, Botein and Rabin, JJ., concur in *Per Curiam* opinion; Cohn, J. P., dissents in part in opinion.

Order modified by reducing the building values in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice. [See *post,* p. 834.]