UNITED STATES of America, Petitioner-Appellee,

v.

396 CORP., Defendant-Appellant.

No. 148, Docket 25275.

United States Court of Appeals Second Circuit.

Argued Jan. 9, 1959.

Decided March 18, 1959.

Marshall Perlin, of Donner, Kinoy & Perlin, New York City, for plaintiff-appellee.

Harry T. Dolan, Sp. Asst. to Atty. Gen. (Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Harold S. Harrison, Attorneys, Department of Justice, Washington, D. C., on the brief), for defendant-appellant.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and GIBSON, District Judge.

GIBSON, District Judge.

This is a condemnation action in which the District Court for the Southern District of New York was called upon to fix the rent that the United States should pay for its occupancy of premises, known as 111 East 16th Street, Borough of Manhattan, New York City, for two yearly periods. The first period began July 1, 1956 and ended June 30, 1957. The second period, which the parties stipulated should be considered at the same time that the first period was considered, commenced July 1, 1957 and ended June 30, 1958. The Government now uses this space as office quarters for the Army Engineers within this area and as offices of the Air Force Procurement Service and two or three minor branches of the Army.

This suit, which was instituted on June 16, 1953, is a continuation of a similar proceeding by the Government covering the five year preceding period. Aside from the matter of date, the terms of the taking are identical.

"The interest to be acquired in the property is the use and occupancy of the property hereinafter described for a term of years commencing July 1, 1953 and ending June 30, 1954, extendible for yearly periods thereafter until June 30, 1958, at the election of the United States, notice of which election shall be

filed in the proceeding at any time prior to the end of the term taken or subsequent extensions thereof, together with the right of removal within a reasonable time after the expiration of the term of any and all improvements or structures placed therein by or for the United States during the term of its occupancy, and any and all improvements, additions or structures which were owned and/or installed by the Government pursuant to the terms and conditions of Government Lease Contract No. W-30-082-eng-5980 with Consolidated Edison Company of New York, Inc., a New York corporation, subject, however, to existing easements for public utilities and for pipe lines."

The building in question was erected in 1909 and is of loft-type. Part of the history of the building as found by the District Court, is as follows:

For five or six years of the depression period following 1929, the building was unoccupied. At some time, not clearly revealed, Metropolitan Life Insurance Company, through foreclosure, acquired title to the real estate. In 1937, that organization leased the same to Consolidated Edison Company for a period of five years. In 1940, the lease was extended for an additional five year term, expiring on September 30, 1947.

The annual rental was $60,000. In addition, the tenant was required to pay all operating and maintenance expenses, both interior and exterior, together with insurance, taxes and assessments. This tenant, during its occupancy, is said to have installed improvements, costing about $360,000. Under the terms of the lease, these improvements were to remain upon the property.

On June 1, 1945, the United States sub-leased the property from Consolidated Edison Company. It agreed to discharge all obligations assumed by its lessor, and to pay an annual rental of $126,000; and, also, to reimburse its lessor to the extent of $58,000 for removable office partitions.

In, or about that year, respondent (appellant) purchased the premises from Metropolitan Life Insurance Company. The consideration was $1,000,000; the cash payment $200,000. The balance was secured by a purchase money mortgage of $800,000 with a term of fifteen years. The mortgage has since been reduced to $700,000 and this sum now carries an interest rate of 5%.

By stipulation of the parties, the yearly rental value of the property for the period September 30, 1947, through June 30, 1953, was set by the Court at $145,335. Thereafter, again pursuant to a written stipulation of the parties, the Court fixed the annual rental for the period July 1, 1953 through June 30, 1955, at $215,000 per annum (86 cents per square foot). On May 15, 1956, the Court, once more acting upon a written stipulation of the parties, set the annual rental value at $215,000 covering the period July 1, 1955 through June 30, 1956.

As previously stated, this action involves the fair rental value for the ensuing two years. At the trial, the testimony as to fair rental value ranged from $205,000 to some $375,000 per annum. Testimony at the trial estimated the fair rental rate at anywhere from 82 cents per square foot to $1.50 per square foot.

The award of the District Court was on the basis of 90 cents per square foot. This results in an amount of $225,000 per annum, or $10,000 more per year than the annual fair value as stipulated by the parties in 1956. An appropriate judgment was entered from which appellant filed a notice of appeal.

The Trial Court's order provided that if the United States did not notify the appellant by January 1, 1958, whether it would continue its tenancy beyond June 30, 1958, the Court would consider the

question whether to increase the award because of uncertainty. The United States gave such notice dated December 23, 1957. Shortly thereafter, the appellant's counsel called someone connected with General Services Administration and asked to what period this extension covered. He did not contact the Government's attorney. Not receiving a definite answer from his contact, the appellant's counsel applied to this Court for a remand to the Trial Court for further hearing. Upon appellant's application and without prejudice to the pending appeal, this Court, by order dated March 6, 1958, remanded the record on appeal in this case to the District Court "pending the determination by that Court pursuant to the order and judgment of the District Court, entered the 22nd day of July 1957." The appellant then filed a motion in the District Court for an order increasing the compensation to be paid to it. Upon consideration of affidavits and a hearing before it, the District Court denied the appellant's motion. Appellant filed notice of appeal from that order and now prosecutes its appeal.

The appellant urges reversal because it claims the Trial Court refused to consider the Government's option and other terms of its taking in establishing the fair market rental value, and thus ignored the holdings of the United States Supreme Court expressed in the cases of Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765, and United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311. With this contention we do not agree. Quite the contrary.

In establishing the fair market rental value, Judge Knox, amongst other factors, had the value of the Government's option very much in mind. In his opinion, after defining the terms of the taking, he stated: "It thus appears that, if the Government elects to extend its occupancy for a particular year, it is without authority to cancel or terminate the same within such year. On the other hand, unless the Government elects to continue its occupancy for a subsequent year, it is under no obligation to do so."

Then the Trial Court listed the landlord's advantages as follows: (1) If the United States should fail to continue its occupancy, the United States would be obliged to convert the building back into a loft structure; (2) the landlord had no responsibility as to maintenance, care and operation of the interior of the building; (3) the landlord receives rent for lobbies, corridors and toilets; (4) tenants that require 250,000 square feet of space are hard to find; (5) rentals in this area will be at a disadvantage beyond those that now exist; and (6) the right of the landlord to annually negotiate or litigate the annual rental.

Then he provided for the landlord's protection against the option provision through the following previously mentioned provision in his judgment order: "In the event the petitioner-plaintiff does not notify the defendant-landlord on or before January 1st, 1958, as to whether it will continue its tenancy beyond June 30, 1958, the defendant-landlord may apply for the fixation of a yearly rental in excess of 90 cents per square foot."

Thus, it is very clear that the Trial Judge weighed the disadvantages of the terms of the Government taking—such as the option and its uncertainty as against the advantages in the lease to the landlord. Then, and only then, he reached his decision that 90 cents per square foot—or $225,000—is a fair annual rental.

It is further to be noted that, because of the order of the Trial Court, the Government, on or about December 24, 1957, gave notice to the landlord that it would continue its tenancy after June 30, 1958.

In addition, Judge Knox personally inspected the premises, incidentally pointing out that the exterior appearance of the building—the landlord's responsibility—was shabby and unkempt.

As this Court has recently stated, "The ultimate findings of value made by the trial court are not lightly open to

reappraisal on appeal." United States v. Jones Beach State Parkway Authority, 2 Cir., 255 F.2d 329, 333. After a careful review of the transcript, of the prior history and rentals, of the terms of the taking, including the option, we conclude that the landlord was awarded all that, in all conscience, it was entitled to, under the Constitution.

The defendant-appellant has obtained, after four years of use of its building, investment by the Government in the property of better than $400,000—at least so says the Government's attorney, and this is not controverted. This is more than the landlord has invested in it. The landlord here seeks an unreasonable increase in rental over that which, one year before, it agreed was fair. The fallacy of the appellant's position is that the Trial Court did not refuse to consider the Government's option and its other terms. It considered them very carefully as heretofore pointed out. The Trial Court rendered a careful, thoughtful, just and conscientious analysis. What we have said as to this alleged error disposes of the appellant's fourth alleged error—namely, that upon the evidence the award of the Trial Court was insufficient to constitute just compensation.

Nor is there merit to the appellant's contention that there must be a reversal because the Trial Court's judgment was based upon a mistake in fact.

Judge Knox did state that the Columbus Avenue property, then rented by the Government for the Immigration and Naturalization Service, was the most comparable property to that here sought to be taken. He did state that the January, 1953, lease of the Columbus Avenue property to the United States provided for annual rental of 90 cents per square foot of floor space, though it is apparent that it actually provided an annual rental of $1.08 per square foot.

Even so, the Trial Court found that the property in controversy was erected in 1909; the Columbus Avenue property was erected in 1927; that the neighborhood of the Columbus Avenue property shows signs of extensive redevelopment, while that around appellant's property does not. He further found that the exterior of the ground floor of appellant's property showed signs of neglect. Nowhere did the Trial Court say he was awarding the same rental to appellant's building as the Government paid for the Columbus Avenue property.

Just before setting the rental of 90 cents per square foot, the Trial Court stated: "In my judgment, it is better wisdom to place reliance upon indisputable statements and events that, generally speaking, are contemporaneous with the matters for decision, and which are unaffected by the heat, partisanship, and controversy that characterize a law suit."

The fixing of the fair market rental was the Trial Court's duty. He had seen these properties, carefully analyzed the entire problem—and reached his decision. We cannot say he was clearly erroneous. International Bureau v. Bethlehem Steel Co., 2 Cir., 192 F.2d 304. We feel his judgment was proper and correct.

Nor is there any merit to the appellant's other claimed error, namely, that the Trial Court relied on incompetent and irrelevant evidence and erroneous standards.

■■■■ Witness Hines, a Government expert witness, whose testimony the appellant challenges, based his appraisal in part upon rental received by landowners whose premises were occupied by the Government pursuant to condemnation or lease. This was competent, relevant evidence. United States v. Meadow Brook Club, 2 Cir., 259 F.2d 41; United States v. Delano Park Homes, Inc., 2 Cir., 146 F.2d 473, 475. As to the stipulation of the parties as to the annual rent for the period 1953–1955, this was only one of the many elements inquired of by the Trial Court in his quest to determine just compensation and was not determinative. The evidence of assessed valuations of which appellant complains was put into evidence voluntarily by appellant's counsel during cross examination

of one of its witnesses by the Government's attorney. As has been held, in a trial without a jury, it will be presumed, absent a clear showing to the contrary, that the Trial Court relied only on proper evidence in reaching its conclusion. Ferguson v. Post, 2 Cir., 243 F.2d 144, 145. Certainly there is no clear showing that the Trial Court relied in any way on assessed valuations. As to the evidence of cost of acquisition, of which appellant complains, this evidence was admissible in the Trial Court's discretion. United States v. Becktold Co., 8 Cir., 129 F.2d 473, 479.

Judgment affirmed.