UNITED STATES of America, Petitioner-Plaintiff,

v.

IMPROVED PREMISES LOCATED AT the NORTHWEST CORNER OF IRVING PLACE AND SIXTEENTH STREET, etc., and 396 Corp., et al., Defendants.

UNITED STATES of America, Petitioner-Plaintiff,

v.

CERTAIN LAND, together with the improvements thereon, ETC., and Benjamin Kaufman, et al., Defendants.

Application of Marshall PERLIN, attorney for the defendants 396 Corp., Jacob Freidus and the Estate of Samuel E. Aaron, Petitioner-Appellant,

to determine and enforce the lien of said attorney for services rendered to the defendants aforesaid in said actions,

Jacob Freidus, the Executors of the Will of Samuel E. Aaron, Benjamin Kaufman and Nathan P. Jacobs, Respondents-Appellees.

Nos. Docket 30193, 30194.

United States Court of Appeals Second Circuit.

Argued Jan. 7, 1966.

Decided Jan. 25, 1966.

See also D.C., 204 F.Supp. 868.

Milton Friedman, New York City, for appellant.

Elliot Ira Miller, New York City, for appellee, Jacob Freidus.

Nathan M. Sokolski, New York City, for appellees, Benjamin Kaufman and Nathan P. Jacobs.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

An attorney, Marshall Perlin (Perlin), petitioner-intervenor in this condemnation suit, appeals from an order denying Perlin's petition to be granted a hearing to determine an alleged lien for attorney's services against a deposit in the Registry of the United States District Court for the Southern District of New York. In the petition, he requested that the lien be "enforced to such extent and in such manner as may be just and proper at the present time * * * [and] that the proceeds of the captioned actions [Civ. 131–97 and 62 Civ. 2272] be preserved and not disbursed until the discharge of petitioner's lien, * * *."

Since 1947, the United States (the Government) by appropriate condemnation proceedings has possessed and occupied premises at 111 East 16th Street, New York, New York. Perlin in his present proceeding claims that since January 1960 he has not been paid by his clients, the lessees of the premises, Jacob Freidus and Samuel E. Aaron, nor by Aaron's estate after Aaron's death, for services rendered to them in two condemnation proceedings. Previous opinions as to this property and the fair compensation therefor have adequately covered the essential facts. For purposes of this appeal, the two proceedings cover a taking (Civ. 131–97) for the year July 1, 1958 to June 30, 1959, extendible for yearly periods to June 30, 1962 and for the period July 1, 1962 to June 30, 1963, extendible for yearly periods no longer than beyond June 30, 1967 (62 Civ. 2272). The issues framed by the pleadings in these proceedings were tried before Judge Dimock as to the period from July 1, 1960 and ending June 30, 1964, and resulted in judgments fixing the fair per annum value in No. 131–97 at $230,000 to which was added for the 1960–62 period a sum of $230,000, and in 62 Civ. 2272 at $230,000 per annum plus an additional sum of $325,833.33 for the 1962–64 period. The judgments were entered on October 8, 1964 and appeals from both judgments are pending. On or before July 1, 1965, the Government deposited $225,000 to be credited against the estimated condemnation award for the period July 1, 1965 to June 30, 1966, which sum since that date is being reduced by $18,750 each month because of monthly payments to Freidus and the Aaron Estate which they, in turn, assert are being used to meet monthly payments to their landlords, Benjamin Kaufman and Nathan P. Jacobs. No orders for those monthly distributions have been made since October 1, 1965.

In denying Perlin's petition, Judge Dimock was of the opinion that since

"there have been as yet no proceedings to fix the compensation for use and occupation for the year July 1, 1965 to June 30, 1966," Perlin could have no lien against any portion of the 1965–66 deposit because Perlin had not as yet rendered any services in any such proceeding. The judge regarded the claims as "four successive and different claims in that action, to wit, for the years ended June 30, 1963, June 30, 1964, June 30, 1965 and June 30, 1966," and held that "these claims were different because, * * * the annual rental is not fixed in advance but the landlord has the right 'to annually negotiate or litigate the annual rent.' United States v. 396 Corp., [2 Cir.] 264 F.2d 704, 707 * * *."

With this conclusion we disagree. Under condemnation, the Government has been in possession of the property since 1947. To be sure, various proceedings had to be held in the absence of stipulation or other agreement to fix the annual amount of compensation and, as the Judge said, "real estate values fluctuate." However, the annual payments arise and become a Government obligation only as a result of the takings pursuant to actions Civ. 131–97 and 62 Civ. 2272. In fact, the deposit of the $225,000 for the 1965–66 period was made for the continued occupancy by the Government pursuant to its right under the complaint in 62 Civ. 2272 to extend its occupancy from year to year.

Under Section 475 of the New York State Judiciary Law, McKinney's Consol. Laws, c. 30, an attorney has a lien upon his client's "cause of action, claim or counterclaim" from the commencement of the "action, special or other proceeding." The fact that under the 1962 taking, extendible until 1967, there might be periodic or annual inquests to fix a specific amount does not thereby create five separate actions or claims for compensation. Nor does the fact that the exact amount of the 1965–66 payment has not yet been fixed deprive Perlin of a lien against the sum now on deposit. Perlin represented Freidus and Aaron in the action which resulted in the oc-cupancy from July 1, 1962 to date. The deposit now in the Registry is there because of the Government's desire to escape interest on its obligation; it is not a voluntary contribution in some other and different action to which Perlin is not related.

In advance of a hearing to determine the value of Perlin's services, this court should render no opinion thereon. Therefore, whether the defenses of waiver and/or estoppel are spurious or have any merit must be passed upon by the trier of the facts. That Freidus and the Aaron Estate claim that they need the money more than Perlin does, should not be an influencing factor.

Perlin by his petition "seeks to enforce his lien against the monies now under the control of the court to the extent of the aforesaid $34,000 [bills rendered by Perlin between April 5, 1961 and November 2, 1964], * * * without prejudice to [his] right to a further counsel fee to be fixed hereafter on the basis of the final result of the condemnation actions, among other things." His disbursements are claimed to be $729.79.

In the judgments appealed from were awards which have been referred to as "risk of vacancy" compensation. This theory of compensation may have been different from the yearly occupancy payments but we do not regard these awards as springing from separate claims or actions. Freidus (in his brief) states that there "is concededly a lien which appellant [Perlin] will utimately have against the proceeds of the final recovery, whether such recovery results from the culmination of the now pending settlement negotiations or, failing the same, by determinations of this Court." Referring to "the judgment pursuant to my [Judge Dimock's] memorandum of December (sic) [July] 6, 1964," Judge Dimock said: "That judgment was obtained by the efforts of petitioner and he is presumably entitled to impress a lien upon its proceeds." In the meantime, however, there is no reason why Perlin should risk the dissipation of the fund now on deposit at least to the extent

of the $34,000 which he currently claims. Therefore, until there be a determination of the value, if any, of the services represented by his bills for services in the amount of $34,000, this amount should not be disbursed by way of monthly payments to Freidus and the Aaron Estate. In the event that the court finds that Perlin's services in connection with the fixing of the annual occupancy awards during the years subsequent to July 1, 1960 do not justify the $34,000, only such amount need be retained as to the court may appear just and proper. Such amount as the court believes should be attributed to services in obtaining the risk-of-vacancy segments of the judgments should await the final outcome of the litigation. It would appear that Perlin's lien as to this phase is not seriously challenged.

Order reversed; petition remanded for hearing to extent set forth in opinion.